# Exhibit 1

Filed
D.C. Superior Court
09/28/2019 08:45PM
Clerk of the Court

IN THE SUPERIOR COURT FOR THE
DISTRICT OF COLUMBIA

(Civil Division)

|  |  |  |
|---|---|---|
| GUO WENGUI a/k/a MILES KWOK<br>a/k/a HO WAN KWOK<br>162 E. 64th Street<br>New York, NY 10065<br><br>    Plaintiff,<br><br>    v.<br><br>CLARK HILL PLC<br>500 Woodward Avenue<br>Suite 3500<br>Detroit, MI 48226,<br><br>    and<br><br>THOMAS K. RAGLAND<br>Clark Hill PLC<br>1001 Pennsylvania Avenue, NW<br>Suite 1300<br>Washington, DC 20004,<br><br>    Defendants.<br><br>SERVE:<br><br>    John J. Hern, Jr.<br>    500 Woodward Avenue<br>    Suite 3500<br>    Detroit, MI 48226<br><br>    Thomas K. Ragland<br>    1001 Pennsylvania Avenue, NW<br>    Suite 1300<br>    Washington, DC 20004 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2019 CA 006164 M |

**COMPLAINT
AND DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.      In this case, plaintiff Guo Wengui, a/k/a Miles Kwok a/k/a Ho Wan Kwok, ("plaintiff") seeks compensatory monetary damages of $50 million or more, jointly and severally, and punitive damages, also jointly and severally, against the defendant law firm Clark Hill PLC ("Clark Hill" or the "firm") and one of the firm's members, defendant Thomas K. Ragland, Esq. ("Mr. Ragland"), for damages, injuries, and wrongs which plaintiff has sustained as the direct and proximate result and consequence of defendants' multiple serious breaches of their duties to plaintiff arising from the firm's legal representation of plaintiff.   In addition to compensatory damages, plaintiff seeks punitive damages.   Punitive damages are warranted here because the wrongful conduct of Clark Hill and Mr. Ragland was reckless, oppressive, intentional, deliberate, and willfully disregarded plaintiff's rights.   (Clark Hill and Mr. Ragland are referred to herein collectively as "defendants" or the "firm.")

2.      Plaintiff was a client of Mr. Ragland and the Clark Hill law firm.   In the course of that representation, Mr. Ragland and the Clark Hill law firm breached a lawyer's/law firm's fundamental obligation to protect from improper unauthorized disclosure plaintiff's (a client's) confidential information.   The firm, specifically including Mr. Ragland, was reckless in its handling of plaintiff's confidential information and, as a direct result of that recklessness, plaintiff's confidential information was disclosed and widely disseminated, all to the great harm, detriment, and oppression of plaintiff.   Having failed to protect plaintiff's confidential information, the firm then proceeded to compound that breach by wrongfully, improperly, and without good cause terminating its representation of plaintiff.   This action, too, was reckless and in willful disregard of plaintiff's rights and in willful disregard of the firm's duties and obligations to plaintiff

2

as a client of the firm.  The firm intentionally undertook a matter beyond its competence and capability and then intentionally, deliberately, and willfully, wrongly placed its interests above the firm's duties to its client.  Plaintiff was damaged as a result of the firm's breaches of the duties which the firm and its lawyer (Mr. Ragland) owed to plaintiff as a client.  The firm's actions were oppressive and were taken in willful disregard of plaintiff's rights.

3.     Plaintiff reasonably relied on the firm's assurances – both implicit and explicit – that the firm understood its ethical and legal obligations, including its fundamental obligation to protect plaintiff's confidential information, *and* that the firm actually had the capability to fulfill its obligations.  In fact, however, Mr. Ragland failed to honor his assurances and, as a result, he recklessly exposed plaintiff's confidential information.   Contrary to Mr. Ragland's representations, the firm did not have adequate and appropriate electronic security measures in place to protect plaintiff's information and Mr. Ragland failed to take appropriate actions to protect plaintiff's confidential information.  The direct consequence of the firm's and Mr. Ragland's failures in this regard was that plaintiff's sensitive confidential information, which plaintiff disclosed to the firm in confidence and which the firm assured plaintiff would be protected, was disclosed broadly and disseminated over the internet on social media platforms.  The firm's breaches of duty to plaintiff caused these unauthorized disclosures.  These disclosures have harmed and damaged plaintiff and those harms and damages are continuous and ongoing.  The firm's conduct here goes far beyond negligence and was conduct which was outrageous in its recklessness and in its willful disregard of plaintiff's rights.

4.     The firm's representation of plaintiff involved preparing and filing plaintiff's application for asylum in the United States.  Plaintiff sought asylum in the United States after

fleeing from his native China to avoid further politically motivated harsh persecution, including fear of being tortured, incarcerated under extreme conditions, and potentially being murdered.

5.     The information which plaintiff disclosed to the firm and which, because of the firm's failures and breaches, was disclosed subsequently to the world, including to persons and interests in China committed to silencing, smearing, and potentially physically harming plaintiff, included information detailing plaintiff's political activities in China as well as other sensitive matters.  This sensitive information, the public disclosure of which jeopardizes the life, safety, and welfare of plaintiff and others, lost its confidential status when it was displayed and published on social media platforms, and this occurred because of defendants' failures to properly protect the information from improper disclosure.   Agents and officials of the Chinese government are believed to be among the parties who gained access to plaintiff's confidential information, which, again, they were able to obtain because of defendants' manifest failures and breaches of duty, including defendants' improper and unlawful actions and inactions in not taking necessary actions to protect plaintiff's confidential information from disclosure.

6.     As plaintiff's counsel, Clark Hill owed plaintiff an undivided duty to act in his best interests. Here, the firm, in its representation of plaintiff and then in improperly terminating that representation, violated that obligation.  The firm knew from the outset of considering whether to undertake the representation of plaintiff that agents and officials of the Chinese government have been and are hostile to plaintiff and pose a genuine threat to plaintiff's life, liberty, and security. These Chinese agents and officials and the persons and interests on whose behalf they have acted in the past and were (and are) expected to act in the future pose, as defendants knew before and when they agreed to represent plaintiff, a direct threat to plaintiff.  Notwithstanding defendants' knowledge of the powerful interests hostile to plaintiff, knowledge which defendants had prior to

agreeing to represent plaintiff, defendants failed to protect plaintiff's confidential information from disclosure from these persons and interests with a known agenda deeply hostile and antagonistic to plaintiff.  Defendants' conduct prejudiced plaintiff, caused him severe personal and financial damage, all of which could have, and should have, been avoided.

7.      Defendants then compounded their breaches to plaintiff when they wrongfully, unlawfully, improperly, without valid cause, and without any meaningful consultation with plaintiff unilaterally terminated their representation of him.   When this matter got "hot," defendants did not stand with their client; rather, they "ducked and ran."  Defendants abandoned their client (plaintiff), and they put their perceived interests above their obligation to act in the interests of their client (plaintiff).  Defendants violated their legal and ethical duty of undivided loyalty to their client.  Defendants' conduct was oppressive, intentional, and willfully disregarded plaintiff's rights.

8.      Plaintiff brings this action because defendants must be – and in this action will be – held accountable for their gross and intentional misconduct.  Defendants are liable for both compensatory and punitive damages.  Defendants' egregious failures to protect plaintiff's information from being exposed to potential "hackers," including failing to have in place and/or to maintain necessary and effective electronic security measures sufficient to protect plaintiff's sensitive and confidential information, violated the rules of professional conduct; constituted a serious breach of the firm's fiduciary duty to plaintiff as a client of the firm; violated the firm's contractual obligations to plaintiff; and violated the firm's obligation to provide plaintiff competent legal representation.

9.      The wide-spread and deeply harmful publication and dissemination of plaintiff's sensitive personal information on social media was the direct, proximate, and inevitable (albeit

entirely avoidable) result and consequence of the firm's breaches of its duties and obligations to plaintiff. The firm then intentionally, deliberately, and oppressively made matters worse when it terminated its representation of plaintiff, advancing a plainly pretextual, if not risible, "justification" for the firm's improper action. Defendants acted in willful disregard for the rights of plaintiff, and defendants' conduct was reckless and taken without regard to the safety or protection of the plaintiff, the firm's client, and in willful disregard of the firm's duties and obligations to plaintiff as a client. Because plaintiff has suffered and continues to suffer serious harm and injury as a result of defendants' actions and inactions, plaintiff seeks monetary damages to compensate him for the grievous harms which defendants have caused him. In addition, plaintiff seeks punitive damages because of the recklessness, wantonness, and oppressiveness of defendants' conduct.

## **PARTIES**

10.     Plaintiff, a native of China, currently resides in New York, NY. Plaintiff has a pending application for asylum in the United States. Plaintiff is a highly successful businessman and a political activist and well-known Chinese dissident. Plaintiff has fought vigorously for many years for the rule of law, human rights, and democracy in China. In early 2015, plaintiff was forced to escape from China as he justifiably feared being unlawfully arrested, detained, interrogated, tortured, and/or killed by the Chinese government and/or the Chinese Communist Party (the "CCP") because of his political activities and outspoken advocacy. (References herein to the "CCP" are inclusive of both the Chinese government and the Chinese Communist Party.)

11.     Defendant Clark Hill PLC ("Clark Hill") is a major law firm of approximately 650 attorneys and professionals, in 25 offices, and operates as a professional services limited liability company, organized and existing under the laws of the State of Michigan. Clark Hill does business

on a regular, constant, and substantial basis in the District of Columbia, specifically including having an office at 1001 Pennsylvania Avenue NW, Suite 1300, Washington, DC 20004, and Clark Hill's lawyers appear regularly before courts, agencies, and Congress in the District of Columbia.

12.     Defendant Thomas K. Ragland, Esq. ("Mr. Ragland") is an attorney licensed to practice law in the District of Columbia and is a member (partner or principal) of the Clark Hill law firm in the firm's District of Columbia office.   Mr. Ragland does business on a regular, constant, and substantial basis in the District of Columbia, including maintaining his office for the practice of law at the Clark Hill office at 1001 Pennsylvania Avenue, NW, Suite 1300, Washington, DC 20004, and appearing before agencies and tribunals in the District of Columbia. (As noted previously, Clark Hill PLC and Mr. Ragland are referred to collectively herein as "defendants" or the "firm.")

## JURISDICTION, VENUE, AND CONVENIENCE

13.     This Court has jurisdiction over this matter pursuant to D.C. Code § 11-921.  This Court has personal jurisdiction over defendants as they both regularly and constantly conduct business in the District of Columbia.  Defendants' actions and inactions giving rise to the matters alleged in this complaint took place in the District of Columbia, including meetings with plaintiff and/or his agents and authorized representative, Dr. Lianchao Han ("Dr. Han").

14.     Venue is proper in this Court and this Court is a convenient forum for this action. This case relates directly to actions and inactions of defendants in connection with their law office and law practice in the District of Columbia; defendants are very much present and engaged in doing business on a daily basis in the District of Columbia; and a substantial part of the events, actions, and inactions giving rise to plaintiff's claims in this complaint occurred in the District of Columbia. By way of illustration, meetings between the firm and plaintiff's authorized

representative, Dr. Han, during which the firm and plaintiff formed an attorney-client relationship, regularly exchanged information relating to plaintiff's asylum application, Mr. Ragland's preparation of that application, the firm's withdrawal from the representation, and other actions and inactions arising out of that relationship occurred in the District of Columbia at the firm's office in the District.  Mr. Ragland was the firm's principal lawyer representing plaintiff and most of the work which Mr. Ragland did on behalf of plaintiff was done in the District of Columbia.

## STATEMENT OF FACTS

**I.     Plaintiff is a political activist and target of the Chinese government and the CCP.**

15.     For years, plaintiff has been a forceful, visible, and well-known advocate for the rule of law, human rights, and democracy in China.  In connection with his political activities and advocacy, plaintiff has, for example, exposed systemic corruption in the CCP, as well as by senior officials of the Chinese government and family members of those officials.  Plaintiff has also disclosed the widespread abuse of human rights in China, including the use of torture.  Plaintiff has opposed Chinese governmental and party suppression of democratic movements in China. Plaintiff has also been involved in exposing the degree, extent, and effectiveness of China's covert cultural, political, economic, and intelligence operations in the United States and elsewhere in the West.

16.     Plaintiff has been effective in influencing international opinion with respect to China and the CCP.  From the perspective of the CCP, plaintiff's activities and advocacy have affected adversely China's and the CCP's stature in the world community and, in response, the Chinese government has attempted to silence plaintiff.  The Chinese government/CCP has employed various tactics, including coercion and offering bribes to attempt to silence plaintiff. Upon information and belief, the Chinese government/CCP has used its overseas intelligence

networks to seek to discredit, silence, and threaten plaintiff's personal safety or, at the very least, to cause plaintiff to have good reason to fear for his personal safety as well as fearing for the safety of family members and friends.

17.     Upon information and belief, the CCP believes plaintiff presently holds not publicly known proof of various types of improper conduct on the part of the CCP and those associated with it and acting on its behalf, including information relating to corruption, murder, hiding of illegally-gained money, and China's spy network.   For these and other reasons, the Chinese government and the CCP are highly motivated, to understate the matter, and engaged aggressively in seeking to silence plaintiff.   The Chinese government and the CCP are equally motivated and engaged in seeking to learn what plaintiff knows about improper activities undertaken by or on behalf of the Chinese government and the CCP.   And, perhaps most critically, the Chinese government and the CCP have the capabilities – the "operational reach" – to carry out aggressive hostile actions against plaintiff.

18.     In or about January 2015, for example, the CCP, through Bruno Wu Zheng, called plaintiff to request that plaintiff cooperate with the CCP and stop disclosing information regarding corruption on the part of senior CCP officials.   Plaintiff refused.   After several failed bribery attempts and threats, Bruno Wu Zheng directed the Central Commission for Discipline Inspection ("CCDI") and the Special Task Force to request (truly demand) that plaintiff cooperate with China and return any evidence he had of corruption among senior leaders.   Plaintiff was asked to hand over his evidence to the CCP and to stop acting against the CCP.   In return, Bruno Wu Zheng promised plaintiff, *inter alia*, that (1) none of plaintiff's assets or properties would be seized by the CCP; (2) all privileges would be returned to plaintiff and his family; (3) plaintiff's family members would not be arrested; and (4) plaintiff would not be physically threatened or killed.

Plaintiff refused this proposal.  Plaintiff anticipated that this refusal would trigger the risk of serious persecution of plaintiff and his family.

19.     Plaintiff's political activities and his refusal to cease those activities, when coupled with the CCP's powerful interest in bringing those activities to a halt, including using brute force, made it dangerous for plaintiff to remain in China.  Consequently, on or about January 2015, plaintiff fled from China.  He rightly feared being arrested, detained, interrogated, tortured, and/or killed by the Chinese government and/or the CCP.  At or around this same time, the CCP seized substantial sums of plaintiff's family's assets and questioned and arrested 18 of plaintiff's family members.  The CCP also arrested or detained a number of plaintiff's colleagues and employees and prohibited others from leaving China.

20.     In May 2017, by which time plaintiff was residing in the United States, the CCP sent Liu Yanping and three other agents to New York City to speak with plaintiff in yet another effort to seek to silence him.  Liu Yanping was then Secretary of the CCDI.  Plaintiff refused this threat as he had refused previous threats.  Instead of giving in to this latest threat, plaintiff disclosed a broad network of CCP spies operating in the United States.  Upon information and belief, the United States government revoked the visas of these four officials, including Liu Yanping, because of their actions in the United States.

21.     The CCP also took another highly aggressive action to seek to silence plaintiff by issuing two International Criminal Police Organization ("INTERPOL") "red [arrest] notices." Plaintiff disputes the legitimacy of these notices.

22.     In or around October 2017, just prior to China's 19th National Congress, an event of great importance to the CCP, plaintiff's Twitter, YouTube, and Facebook accounts were abruptly and suspiciously suspended, all without explanation.

23. Upon information and belief, beginning in 2017, the Chinese government and/or the CCP sent agents and officials to the United States to organize demonstrations aimed directly against plaintiff outside the building in New York City where plaintiff resides. Persons attending these CCP-staged demonstrations, literally on plaintiff's front steps, were provided with preprinted signs defaming plaintiff in vile language, calling him a rapist and a liar, and urging plaintiff to leave the United States.

24. The CCP separately orchestrated a malicious negative propaganda campaign against plaintiff. The CCP formed a team of people, the "50-cent troll army," to manipulate public opinion on social media for the benefit of the CCP. The commentators created favorable comments or articles on popular Chinese social media networks intended to derail discussions that are unfavorable to the CCP and promote narratives that serve the government's interests, together with disparaging comments and misinformation about political opponents and critics of the Chinese government, such as plaintiff.

25. Merely supporting plaintiff became a crime in China. One of plaintiff's supporters, Dong Qi, reportedly was arrested and sent to jail for wearing a T-shirt with plaintiff's slogan — "Everything is just beginning" — on it. Upon information and belief, plaintiff's followers have been questioned, restrained, and intimidated.

26. Upon information and belief, the CCP perceives plaintiff as a dangerous challenge to the stability, legitimacy, and credibility of the Chinese regime and the CCP.

27. Plaintiff's political actions and advocacy are known to and widely supported by many people in China and, indeed, around the world. The domestic Chinese and international support which plaintiff has and the related strong support for his political and advocacy activities are additional sources of anger, aggravation, deep displeasure, and frustration to the CCP.

11

**II.     Plaintiff retains the Clark Hill law firm to represent him in preparing and submitting an application for asylum in the United States.**

28.     Paragraphs 15-27 *supra,* describing plaintiff's political activities and advocacy and resulting persecution and justifiable fear of further retaliation after fleeing from China, provide background and context for plaintiff's seeking legal representation to assist him and advocate on his behalf in applying for and obtaining political asylum in the United States.  Plaintiff retained Mr. Ragland and the Clark Hill law firm to represent him in this regard.  Mr. Ragland holds himself out as a leading immigration lawyer.  Mr. Ragland and the firm represented to plaintiff that Mr. Ragland and the firm were qualified, capable, and competent to represent plaintiff and to protect his interests fully and professionally.  Plaintiff relied upon these representations; however, they turned out to be false.

29.     Clark Hill receives and expects to receive (as any large law firm would) a large amount of confidential client information, including financial records, trade secrets, sensitive personal communications and disclosures, and sensitive personally identifiable information (*e.g.*, addresses, contact information, social security numbers, and health information).  Receiving such information is a daily occurrence at Clark Hill (again, as it is at any law firm of comparable size). Clients, specifically including the present plaintiff, disclose confidential information to Clark Hill reasonably and justifiably relying on the firm's professional ethical and legal obligations to protect and preserve the confidentiality of their information, while strictly limiting disclosure of such information to that information which the client authorizes the firm to disclose.

30.     Clark Hill has clear and undeniable ethical and legal obligations to preserve a client's (plaintiff's) confidential information. These obligations to preserve confidentiality include information provided to the firm electronically and/or stored electronically on the firm's computer network.  At all relevant times, Clark Hill and Mr. Ragland communicated to plaintiff, both

implicitly and explicitly, that the firm understood its obligations to preserve plaintiff's confidential

information and, of equal importance, that the firm could and would do so (*i.e.*, that the firm had

the requisite professional and technical knowledge, capability, and competence to protect

plaintiff's information).

31.     On or about August 2017, plaintiff met with defendants in connection with

plaintiff's potentially retaining the firm to represent him in preparing and filing his planned asylum

application.   During that meeting, plaintiff explained his standing and visibility as a prominent

Chinese political dissident who is perceived as hostile to the CCP and related interests in China.

Plaintiff also explained the risks associated with and attendant to plaintiff's position as a prominent

visible critic of the Chinese regime.   Plaintiff warned of the persistent and relentless cyberattacks

that he and his associates had endured.   At that meeting and subsequently, plaintiff disclosed to

the firm confidential information about plaintiff's political and advocacy activities and equally

sensitive confidential information regarding plaintiff's knowledge of wrongful actions and

activities of the CCP.   The firm knew from the very outset that plaintiff's asylum application was

not "routine" and that in connection with that application plaintiff would necessarily be disclosing

highly sensitive confidential information to Mr. Ragland and to the Clark Hill law firm.

32.     In meetings with the firm, plaintiff explained that any law firm preparing his asylum

application had to expect to be subjected to sophisticated cyberattacks.   Having been so informed,

with "eyes wide open," and with a full awareness and understanding of the cyber security and other

potential risks involved, defendants agreed to move forward and agreed to undertake the

representation of plaintiff.

33.     In agreeing to undertake the representation of plaintiff, Mr. Ragland and the firm

agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive

confidential information.   Such precautions would include not placing any of plaintiff's information on the firm's computer server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a "hacker" interested in obtaining the information.  The firm also committed and agreed to have in place at all times the requisite security measures to protect plaintiff's confidential information and to otherwise provide plaintiff ethical and competent legal representation.  Had the firm not made these commitments and agreements, plaintiff would not have retained the firm.

34.     On or about August 28, 2017, plaintiff, through his authorized representative, Dr. Han, and defendants executed a letter of agreement (the "retention agreement") for legal services pertaining to plaintiff's asylum application. That agreement created and formalized contractual, common law, and professional ethical and legal duties and obligations of defendants (as legal counsel) to plaintiff (as client), including the duties and obligations of undivided loyalty and the duties and obligations to maintain adequate and necessary security measures sufficient to safeguard plaintiff's sensitive personal and confidential information and documents.

35.     Whatever the firm's security protection obligations are or should be with respect to maintaining reasonable security measures to safeguard an "ordinary" client's sensitive personal information and confidential documents, the firm here was on full notice ("high alert") that the representation of plaintiff was in no sense an "ordinary" representation  with "ordinary" risks of unauthorized disclosure.  That is, the firm knew from the very outset, and prior to the firm's agreeing to undertake the representation of the plaintiff, that special care and attention to security measures were necessary, required, expected, and agreed-to by the firm.  In agreeing to represent plaintiff, the firm agreed to take the necessary steps and actions to protect plaintiff's confidential

information recognizing that meant the firm would take "more than ordinary" protective efforts. Had the firm not so committed and agreed, plaintiff would not have retained the firm.

36.     In accordance with the retention agreement, plaintiff paid defendants a retainer fee of $10,000, and the firm subsequently billed plaintiff (or his authorized representative) for its fees and the firm's fees were paid.

37.     The firm's retention agreement and its related standard terms of engagement state, among other things, that plaintiff, as a client, has the right to "expect competent representation by an attorney" of the firm; that the firm "will at all times act on your behalf to the best of our ability"; and that the firm's lawyers "are subject to the Rules of Professional Conduct governing attorneys in Washington, DC."[1] *See also* CLARK HILL, *About Us*, https://www.clarkhill.com/pages/about (last visited Aug. 29, 2019) ("Ethical [b]ehavior is [n]on-[n]egotiable.  We believe in doing the right thing every time.  We uphold our professional responsibilities and are accountable for our actions.").

38.     Plaintiff delivered sensitive personal information and confidential documents to defendants so they, as counsel, could complete plaintiff's asylum application.  That application was prepared in the District of Columbia by Mr. Ragland in consultation with Dr. Han, plaintiff's authorized representative in the District of Columbia.  The application was filed with the United States Department of Homeland Security in Washington, D.C. on September 5, 2017.  As necessary and as appropriate and subject to appropriate protections (*e.g.*, under seal or *in camera*), plaintiff will identify the confidential information he disclosed to the firm.

---

[1] Plaintiff certainly does not concede and expressly disputes that the retainer agreement's identification of certain rights is exclusive, and that plaintiff did not and does not have other rights.

III.   **Defendants' failure to adequately protect plaintiff's confidential information led to the information being disclosed and disseminated widely and harmfully.**

39.     Notwithstanding (1) the firm's obligation to protect the confidentiality of plaintiff's information, (2) the firm's advance knowledge of the circumstances of plaintiff's case and the increased need for protection of plaintiff's information, and (3) defendants' agreement, by undertaking the representation of plaintiff and otherwise, that it would and could protect plaintiff's confidential information, the firm failed to do so.  Discovery is needed to determine the specific details of the firm's failures; however, it is beyond dispute that the firm failed as plaintiff's information was disclosed.  Plaintiff alleges that Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third parties, including to third parties not approved by plaintiff.  If, as plaintiff believes and here alleges, that Mr. Ragland used his firm email account to transmit plaintiff's confidential information to third parties, that reckless and wanton conduct "opened the door wide" to the firm's server to potential "hackers" and thoroughly compromised the confidentiality of plaintiff's information.

40.     The combination of Mr. Ragland's reckless conduct and the firm's  inadequate cybersecurity measures and infrastructure was fatal.  As a result, plaintiff's sensitive confidential information was not protected, but was disclosed to the world at large, and thus made available to the CCP and others with hostile intent to plaintiff and with the capacity to carry out that hostile intent.

41.     The firm has indicated that on or about September 12, 2017, the firm's computer system was "hacked" by a third party.  This third party, apparently without great difficulty, circumvented the firm's demonstrably inadequate (essentially porous) security and monitoring programs.  After doing so, the third party "hacker" was able to locate and exfiltrate (obtain)

plaintiff's asylum application and affidavit and, perhaps, other information and materials relating to plaintiff.  On September 12, 2017, Mr. Ragland wrote to Dr. Han, plaintiff's representative, that "his computer is down – apparently it was attacked."

42.    The firm's security measures, whatever they were, failed to "safeguard" plaintiff's sensitive personal information and confidential documents.  The firm's security measures were inadequate, unreasonable, and fell woefully far short of defendants' promises, assurances, obligations, and commitments to provide adequate security measures, given the circumstances of this case, in violation of defendants' contractual, common law, and professional duties to plaintiff.

43.    Because of defendants' failures, documents obtained by the third party included plaintiff's and plaintiff's spouse's sensitive personal information – e.g., plaintiff's passport identification number; plaintiff's I-94 admission-number; plaintiff's spouse's passport identification number; and plaintiff's spouse's I-94 admission-number.  Beginning on or about September 23, 2017, sensitive personal information and confidential documents obtained from defendants' computer system relating to plaintiff began to appear on Twitter.  The published material included the following:

    a.   A copy of plaintiff's application for political asylum;

    b.   Plaintiff's passport identification number;

    c.   Plaintiff's I-94 admission-number;

    d.   Plaintiff's spouse's passport identification number; and

    e.   Plaintiff's spouse's I-94 admission-number.

44.    The information published and disseminated on social media included sensitive personal information and confidential portions of plaintiff's asylum application and affidavit.  Plaintiff provided this and other highly sensitive information, including the entire contents of

17

plaintiff's asylum application, to defendants in connection with their representation of plaintiff. Plaintiff did not consent to nor did he authorize the disclosure of any of the information to any persons other than to those in the United States government with a direct "need to know" in connection with the review of plaintiff's asylum application. By law, asylum applications are strictly confidential. By virtue of the wrongful conduct of Mr. Ragland and the firm, plaintiff's asylum application became entirely public and was published on social media sites.

45.    Defendants cannot properly, let alone reasonably, defend their undeniable failure to protect plaintiff's information on grounds of "impossibility" or some variation of that theme. If defendants lacked the will, the resources, or the technical capability or sophistication to protect plaintiff's information from being disclosed, defendants were duty-bound to disclose this limitation (whatever its cause and despite such disclosure being against the defendants' economic interest in gaining plaintiff as a client) to plaintiff *prior* to the firm's undertaking the representation of plaintiff, and thus afford plaintiff the opportunity not to retain the firm to represent him. The firm denied plaintiff this opportunity. The legal and ethical obligations of lawyers (here, Mr. Ragland) include the obligation to decline a representation when the matter is beyond the competence, capacity, or ability of the lawyer. Mr. Ragland and the Clark Hill law firm breached that duty and obligation because they undertook the representation of plaintiff when they lacked the competence and ability to do so professionally, properly, and without harming their client (plaintiff).

46.    Since the "hacking," defendants have largely "stonewalled" and refused to provide plaintiff any meaningful information about what occurred. For example, defendants have refused to advise plaintiff of the scale of the attack, including whether materials of clients other than plaintiff were obtained and, if so, whether the firm withdrew from those representations, and

18

whether there is any discernible pattern in the materials seized; and defendants have likewise refused to advise plaintiff of how defendants first learned of the attack and what counter-measures, if any, defendants took.

47.   On or about May 14, 2019, Daniel S. Steinberg, Esq., as counsel for plaintiff, wrote to the firm's General Counsel, Edward J. Hood, Esq., to inquire regarding the cyberattack.   Mr. Steinberg requested answers to several specific relevant questions:

    a.   Have you been able to identify the source of the attack and the mechanism by which access was gained to your firm's information systems?

    b.   What records were obtained by the hacker, and were they obtained by unauthorized access to an email server or by direct access to a storage location?

    c.   How did the attacker circumvent the firm's security measures, or did the attack entail malicious software that gained control of the firm's computer system until [plaintiff's] information was transferred?

48.   On or about May 23, 2019, Mr. Hood, claiming, without explaining, that the investigation which was conducted of the "hacking" is privileged, provided only a limited response.   Mr. Hood failed to answer the direct question of "how did the attacker circumvent the firm's security measures."   Presumably, the investigative report, which, to date, the firm has steadfastly hidden from plaintiff as the victim of the attack, includes at least a preliminary answer to this question.

**IV.   The firm's improper withdrawal as plaintiff's counsel.**

49.   A week following the "hacking" of defendants' plainly inadequate system, on or about September 19, 2017, Mr. Hood, in his capacity as General Counsel of the Clark Hill law firm, wrote to plaintiff to inform him that defendants were terminating their representation of plaintiff:

I regret to inform you that, after careful consideration, the Firm has concluded it must withdraw as your legal counsel.

**********

The cyberattack has presented several ethical complications with continuing to represent you.  A primary concern is that the cyberattack will require Mr. Ragland – and possibly other members of the Firm – to be a witness in your asylum proceeding.  Under our Rules of Professional Conduct, a lawyer may not serve as an advocate in a proceeding where the lawyer is likely to be a material witness. Here, the cyberattack has placed Mr. Ragland in an untenable position of being a witness in your asylum case while simultaneously serving as your attorney.  At this point, Mr. Ragland must confine his role to that of witness, rather than legal advocate.  (Emphasis added.)

50.     The firm's stated "reason" for its extreme unilateral action that "it must withdraw" was that Mr. Ragland and perhaps others at the firm might be a witness in plaintiff's asylum proceeding.  This "reason" is without credibility or merit.

51.     For example, no hearing was pending when the firm unilaterally withdrew from and abandoned plaintiff (and none is pending as of this filing); plaintiff had not asked that Mr. Ragland be a witness were there a hearing; as the client, it would be plaintiff's decision, not Mr. Ragland's or the firm's decision, as to whether the value or necessity of Mr. Ragland's testimony at any hearing outweighed the firm's continuing as counsel (particularly in light of Mr. Ragland's claimed preeminence in immigration and asylum matters); the substance of Mr. Ragland's testimony at any hearing, were he to testify, would relate to uncontested matters, *i.e.*, that the firm's server had been "hacked" and plaintiff's information had been obtained; the firm never asked plaintiff's opinion on the matter; and the firm never so much as hinted, let alone explained, why Mr. Ragland's testimony was, supposedly, so "essential" at a then-non-existent hearing as to warrant the firm's unilaterally, precipitously, and without regard to the best interests of plaintiff terminating its attorney-client relationship with plaintiff when it did.

52.     The firm simply wanted "out" despite its clear contrary ethical obligations, including the duty of undivided loyalty to its client (plaintiff).  To accomplish its improper "fire the client" escape mission, the firm manufactured a plainly bogus "reason" to seek to justify its action.  Here, the firm's client had done nothing wrong and certainly had done nothing to warrant such brutal, unjustifiable, and unethical treatment.  Determining the firm's actual reason(s), as distinguished from its manufactured one, for its wrongful termination of its representation of plaintiff, including whether the firm yielded to pressure whether from the "hacker" or otherwise, will be an important area for discovery.

53.     Clark Hill has advised that it conducted (or had conducted on its behalf) an investigation of the cyberattack at issue in this case.  That investigation and any investigative report may address the topic of the firm's improper withdrawal from representing plaintiff.  To date, the firm has failed to provide plaintiff any investigative report produced as a result of the internal investigation of this matter despite the fact that the plaintiff's information was obtained, and perhaps the only successful target of the attack, and the firm terminated its representation of plaintiff because of that attack.  Plaintiff will seek this report in discovery.  Accordingly, defendants are hereby on notice to preserve the report and all related drafts, investigative notes, transcripts, exhibits, and materials.

54.     If defendants were unwilling or unable to protect plaintiff's sensitive confidential information, or lacked the competence or the capability to keep plaintiff's information off the firm's server, or to secure properly its computer system and network to protect plaintiff's information, defendants were duty-bound to disclose this critical limitation to the plaintiff at the outset and prior to committing to represent plaintiff to give the plaintiff an opportunity to make an informed judgment as to whether to retain the firm given its limitations.  The firm made no such

disclosure and thereby denied plaintiff the opportunity to make an informed decision on retaining the firm.  Had the firm been forthright and candid about its limitations and lack of adequate security measures and protections, plaintiff would not have retained the firm as his counsel.

**V.  Defendants' breaches of duty have damaged plaintiff.**

55.    As a direct and proximate cause of defendants' multiple breaches of their duties and legal obligations to plaintiff, plaintiff's sensitive personal information and confidential documents were disclosed to third-parties, to the world at large, and to persons and institutions in China, including the Chinese government and CCP, to the great and severe injury, harm, and detriment of plaintiff.

56.    As a direct consequence of defendants' wrongful and unlawful conduct, plaintiff has suffered and continues to suffer damages to his personal and professional reputation; he has lost substantial business opportunities; plaintiff's personal safety and security have been put at risk; his efforts to obtain political asylum have been delayed; his family has been arrested and threatened; plaintiff's employees in China have been harassed; plaintiff has incurred costs and expenses; and plaintiff has been denied the benefit of defendants' claimed immigration law expertise in connection with pursuing plaintiff's asylum application.  Defendants' breaches of their legal duties and obligations caused these and potentially other harms and damages to plaintiff. These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

57.    As a direct and proximate cause of defendants' multiple breaches of their duties and legal obligations, the details and contents of plaintiff's asylum application and other materials have been disclosed widely on social media platforms and placed in the hands of third-parties hostile to plaintiff.  There are powerful people and interests in China and elsewhere hostile to

plaintiff because of his political activities who now have – solely because of defendants' failures and breaches of duty – detailed information about plaintiff which they would not otherwise have. There is good cause to believe that these persons have used and will continue to use plaintiff's confidential information for purposes harmful to plaintiff.

58.     The severe harm defendants have caused extends to limiting plaintiff's freedom and liberty to travel and jeopardizes his personal safety.  Defendants' breaches of legal duties and obligations caused these harms and damages to plaintiff.  These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

59.     The defendants' failure to safeguard plaintiff's sensitive personal information and confidential documents was the direct and proximate cause of the dissemination of plaintiff's sensitive personal information and confidential documents on social media, the publication of which has caused great harm to plaintiff by tarnishing his reputation and undermining his credibility and the credibility of his work in advancing the causes of bringing the rule of law, democracy, and justice to China.  Defendants' breaches of legal duties and obligations caused these harms and damages to plaintiff.  These harms are continuous and ongoing, and there is a substantial risk, if not likelihood, of additional harm and damage in the future.

60.     Defendants' improper and unjustified termination of its attorney-client relationship and attendant obligations has harmed and damaged plaintiff.  Defendants' improper action in abandoning their client (plaintiff) denied plaintiff the benefit of counsel at a time when he needed counsel (because his confidential information had just been splayed all over social media); sent the message to the public that plaintiff was somehow untrustworthy or acted improperly in connection with the representation;  denied plaintiff defendants' claimed expertise in immigration law; and has caused and/or will cause undue delay and complications in action on plaintiff's

asylum application.  These harms are continuous and ongoing, and there is a substantial risk, if not

likelihood, of additional harm and damage in the future.

61.    At trial, the jury will determine plaintiff's compensatory damages proximately

caused by defendants.  Plaintiff alleges that those damages are no less than $50 million and seeks

a judgment in at least that amount.

## PUNITIVE DAMAGES

62.    At trial, the jury will also be asked to award significant punitive damages in an

amount the jury determines to be appropriate.  Punitive damages are warranted here because

defendants' actions, inactions, and breaches of duties and obligations were reckless, wanton,

intentional, and taken in willful disregard of plaintiff's rights and of defendants' obligations and

duties to protect plaintiff's rights.

63.    Defendants were reckless in their handling of plaintiff's confidential information.

Defendants' recklessness included failing to protect that information, putting it on the firm's

computer server, either directly or indirectly by transmitting the information to third parties via

the firm's email account, or otherwise.  These actions were intentional, deliberate, and willfully

disregarded plaintiff's rights and defendants' obligations and duties to protect plaintiff's rights.

64.    Defendants knew and understood the importance of protecting plaintiff's sensitive

and confidential information, and that the dissemination of such information would jeopardize the

personal and professional interests of plaintiff, plaintiff's family, including putting plaintiff and

his family at grave risk of harm.  Defendants specifically knew and understood that the CCP would

attempt to obtain plaintiff's sensitive and confidential information and use that information to harm

plaintiff and his family.  Nevertheless, defendants ignored these very real and present risks, and

their conduct was accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful

disregard of the plaintiff's rights, his safety, his family's safety, and with other circumstances tending to aggravate plaintiff's injuries.

65.    Defendants' compounded their recklessness by abandoning plaintiff as their client, choosing self-interest over protecting their client.  Defendants' unilateral withdrawal as plaintiff's counsel was intentional, deliberate, reckless, and unwarranted conduct, and conduct in willful disregard of plaintiff's rights and of defendants' obligations and duties to protect plaintiff's rights.

## CLAIMS FOR RELIEF

## COUNT I – Breach of Fiduciary Duties

66.    Plaintiff adopts and incorporates by reference ¶¶ 1-65 as if each were here fully set forth.

67.    Defendants formed an attorney-client relationship with plaintiff.  As a consequence, defendants owed plaintiff all the fiduciary duties and obligations which a lawyer owes to a client. Rather than honor those duties and obligations, defendants breached them.

68.    At all relevant times, the fiduciary duties defendants owed to plaintiff included, but were not limited to, the duty not to undertake a matter beyond the professional and technical competence, capability, and capacity of defendants; the duty to maintain reasonable and adequate, in this case meaning heightened, security measures to safeguard plaintiff's sensitive personal information and confidential records; the duty not to expose plaintiff's confidential information to the risk of disclosure by allowing the information to appear on the firm's computer server; the duty to exercise at all times the utmost good faith and undivided loyalty toward plaintiff; the duty to provide competent professional legal representation; and the duty not to withdraw from representing plaintiff, effectively abandoning him, absent valid and appropriate cause.

69.     Defendants breached their fiduciary duties to plaintiff.  These breaches include defendants' failing to maintain reasonable security measures to safeguard plaintiff's sensitive personal information and confidential records by failing to maintain reasonable security measures, including placing information on the firm's computer server and/or allowing access to the firm's server, thus allowing unauthorized third-parties to gain access to electronic files and communications containing plaintiff's sensitive personal information and confidential documents.

70.     Defendants further breached their fiduciary duties and obligations to plaintiff by improperly and without valid cause withdrawing from representing plaintiff, whether in response to a "ransom" demand or otherwise.   Defendants acted to advance their interests and contrary to the interests of the firm's client (plaintiff) to whom the firm owed its primary duty of undivided loyalty.

71.     Defendants had no valid or legally or ethically sufficient cause for terminating their representation of plaintiff.  Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel.   The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some unknown as-of-yet not scheduled hearing) was a transparent sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client relationship.

72.     If defendants released plaintiff's sensitive personal information and confidential documents to regain control of their computer system, or engaged in any similar conduct (a topic plaintiff will pursue in discovery), defendants breached their primary duty of undivided loyalty to plaintiff as the firm's client by placing the interests of the firm above the interests of plaintiff.

73.     Plaintiff has been harmed and damaged as a result of defendants' breaches of duty to plaintiff.  The amount of plaintiff's damages will be determined at trial.

74.     In addition to compensatory damages, defendants are liable for punitive damages because defendants' actions willfully disregarded the rights of plaintiff, were intentional, deliberate, and reckless.  The amount of punitive damages will be determined at trial.

## COUNT II – Breach of Contract of Representation

75.     Plaintiff adopts and incorporates by reference ¶¶ 1-74 as if each were here fully set forth.

76.     Plaintiff entered into a written contract with plaintiff for the firm to represent the plaintiff.  Defendants breached their contractual obligations to plaintiff by undertaking a matter beyond defendants' professional or technical competence, capability, and competence; by failing to provide plaintiff competent representation; by neglecting to undertake reasonable security measures to safeguard plaintiff's sensitive personal information and confidential documents; and by improperly and wrongfully terminating the firm's representation of plaintiff.

77.     Defendants further breached the retention agreement and the associated terms of engagement if they delivered a "ransom" to unknown third parties that included ceasing to represent plaintiff and/or providing plaintiff's sensitive personal information and confidential documents (plaintiff will pursue this topic in discovery).  If defendants did so, they failed to provide competent representation and failed to act to the best of their ability and for the benefit of their client.

78.     The firm wrongfully placed its interests above the interests of its client (plaintiff) in violation of the firm's contractual and ethical obligations.  Defendants had no good or sufficient cause for terminating their representation of plaintiff.  Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel.  The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some

unknown as-of-yet not scheduled hearing) was a sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client contractual relationship.

79.    Plaintiff has been harmed and damaged as a result of defendants' breaches of their contractual duties and obligations to plaintiff.   The amount of plaintiff's damages will be determined at trial.

## COUNT III – Legal Malpractice

80.    Plaintiff adopts and incorporates by reference ¶¶ 1-79 as if each were here fully set forth.

81.    At all relevant times, an attorney-client relationship existed between plaintiff and defendants.  Defendants owed plaintiff contractual, common law, and professional duties to use the required degree of professional care and skill to represent plaintiff competently and professionally and consistent with the applicable standard of care.  As detailed in this complaint, the firm did not represent plaintiff with the required degree of professional care and skill. Defendants breached their duties to plaintiff.

82.    The standard of care governing a lawyer's representation of a client is defined by a combination of contractual, common law, and professional (ethical) duties and obligations.  In this case, the firm breached the standard of care to represent plaintiff competently and professionally as the firm's representation of plaintiff and its termination of that representation fell far short of the required standard of care.

83.    Defendants breached their contractual, common law, and professional and ethical duties and obligations to plaintiff by undertaking a matter beyond defendants' professional or technical competence and capability; by failing to use the required degree of professional care and skill in representing plaintiff, resulting in the global exposure and dissemination of plaintiff's

sensitive personal information and confidential documents; and by wrongfully and without valid cause terminating their representation of plaintiff.

84.    Defendants failed to take competent and reasonable measures to safeguard plaintiff's sensitive personal information and confidential documents by, *inter alia*, failing to maintain reasonable security measures to secure plaintiff's files and communications; failing to maintain reasonable security measures to secure email accounts and information systems, including the data contained within them, from unauthorized access by third parties; and failing to maintain reasonable security measures to prevent email accounts from being accessed by unauthorized third parties.

85.    Had Mr. Ragland done as he promised—not exposed plaintiff's sensitive confidential information—and had defendants maintained reasonable security measures to secure their computer system from unauthorized access, as required and promised to plaintiff, the cyber adversary would not have been able to gain access to plaintiff's sensitive personal information and confidential documents.   If defendants lacked the will, the competence, or the capability to properly secure the firm's computer system and network and thereby protect plaintiff's information from unauthorized disclosure, defendants were duty-bound to disclose this limitation to the plaintiff at the outset, prior to undertaking the representation, to give the plaintiff an opportunity to make an informed judgment as to whether to retain the firm given its limitations. The firm made no such disclosure and thereby denied plaintiff the opportunity to make an informed decision on retaining the firm.

86.    Defendants further breached their contractual, common law, and professional duties to plaintiff if they delivered a "ransom" to unknown third parties that included ceasing to

represent plaintiff and providing plaintiff's sensitive personal information and confidential documents.

87.     Defendants further breached their contractual, common law, and professional duties to plaintiff by improperly and wrongfully terminating their representation of plaintiff and by the manner in which defendants did so.  Defendants had no good, sufficient, or valid cause for terminating their representation of plaintiff.  Plaintiff had satisfied his obligations as a client; defendants breached their obligations as counsel.  The firm's stated reason for terminating its attorney-client relationship with plaintiff (that Mr. Ragland might be a witness in some unknown as-of-yet not scheduled hearing) was a transparent sham proffered to justify the defendants' improper unilateral decision to terminate the attorney-client relationship.

88.     Plaintiff has been harmed and damaged as a result of defendants' breach of their duties and obligations of care and competence to plaintiff.  The amount of plaintiff's damages will be determined at trial.

## COUNT IV – Punitive Damages

89.     Plaintiff adopts and incorporates by reference ¶¶ 1-88 as if each were here fully set forth.

90.     Because defendants' actions, inactions, failures, breaches of duties and obligations, and violations of plaintiff's rights were intentional, deliberate, outrageous, and in willful disregard of defendants' duties and obligations and in willful disregard of plaintiff's rights, defendants are liable to plaintiff for punitive damages, in addition to compensatory damages.

91.     Defendants' conduct at issue in this case is so far beyond the pale as to warrant punitive damages.  Defendant's intentional, deliberate, wrongful conduct involves the failure to protect plaintiff's confidential information from deeply harmful public disclosure despite

defendants' specific knowledge of the acute need to do so followed by defendants' then immediately "running away" from its client (plaintiff) after the disclosure occurred, which occurred because of defendants' failures.

92.     Defendants' intentional and deliberate failures made plaintiff's information accessible to "hackers" and then defendants' intentionally, deliberately, wrongfully, and without regard to their duties and obligation and in willful disregard for the rights of plaintiff abandoned plaintiff as their client.

93.     The jury will determine the appropriate amount of punitive damages.

## PRAYERS FOR RELIEF

At trial or afterwards, plaintiff will seek a compensatory monetary judgment against defendants, jointly and severally, in an amount in excess of $50 million, plus interest at the legal rate, the costs and disbursements of this action, and such other relief as is just and proper.

In addition, plaintiff shall seek a judgment against defendants, jointly and severally, for significant punitive damages in an amount to be determined by the jury.

Respectfully submitted,

/s/ Ari S. Casper
Ari S. Casper (#471013)
Ralph S. Tyler (#357087)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(410) 989-5097 – Phone
(410) 630-7776 – Facsimile
acasper@casperfirm.com
rtyler@casperfirm.com
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

_/s/ Ari S. Casper_____
Ari S. Casper

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok

Case Number: __2019 CA 006164 M__

vs

Date: __September 18, 2019__

Clark Hill PLC and Thomas K. Ragland

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*  Ari S. Casper | Relationship to Lawsuit |
|---|---|
| Firm Name:  The Casper Firm | ☒ Attorney for Plaintiff |
| Telephone No.:            Six digit Unified Bar No.:<br>410-989-5097                          471013 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury      ☒ 6 Person Jury          ☐ 12 Person Jury

Demand: $ 50,000,000.00 _____          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                                **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☒ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
      (DC Code § 11-941)
☐ 10 Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
      (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
      Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
      Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
      Judgment [ D.C. Code §
      2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
      42-3301, et seq.)

☐ 21 Petition for Subpoena
      [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
      (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Ari S. Casper
_____
Attorney's Signature

September 18, 2019
_____
Date

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

WENGUI GUO
   Vs.                                         C.A. No.       2019 CA 006164 M
CLARK HILL PLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                         Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date:  September 19, 2019
Initial Conference: 9:30 am, Friday, December 20, 2019
Location:   Courtroom 317
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

D.C. Superior Court
09/25/2019 13:55PM
Clerk of the Court

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok
_____
Plaintiff

vs.

Clark Hill PLC
_____
Defendant

Case Number __2019CA006164M__

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Ari S. Casper**
Name of Plaintiff's Attorney

**400 E. Pratt Street, Suite 903**
Address
Baltimore, MD 21202

**410-989-5097**
Telephone

By _____
Deputy Clerk

Date **09/26/2019**

如需翻譯，請打電話 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Guo Wengui a/k/a Miles Kwok a/k/a Ho Wan Kwok
_____
Plaintiff

vs.

Thomas K. Ragland                              Case Number    2019CA006164M
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Ari S. Casper
_____
Name of Plaintiff's Attorney

400 E. Pratt Street, Suite 903        By _____
_____                        Deputy Clerk
Address
Baltimore, MD 21202

410-989-5097                          Date    09/26/2019
_____
Telephone
如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español