**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GUO WENGUI a/k/a MILES KWOK a/k/a | ) | |
| HO WAN KWOK, | ) | |
| 162 E 64th Street | ) | |
| New York, NY 10065 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:19-cv-3195-JEB |
| CLARK HILL PLC | ) | |
| 500 Woodward Avenue | ) | Hon. James Boasberg |
| Suite 3500 | ) | |
| Detroit, MI 48226 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THOMAS K. RAGLAND, | ) | |
| c/o Clark Hill PLC | ) | |
| 1001 Pennsylvania Avenue, NW | ) | |
| Suite 1300 | ) | |
| Washington, DC 20004, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................2

LEGAL STANDARD ...............................................................................................5

ARGUMENT ...........................................................................................................6

I.   Plaintiff's Legal Malpractice Claim Fails Because He Can Not Allege That
     Defendants Breached A Duty To Plaintiff. ....................................................6

     A.   Defendants' Withdrawal From The Representation Did Not Breach A
          Duty. ......................................................................................................6

          1.   Withdrawal was necessary under Rule of Professional Conduct 3.7. .........7

          2.   Withdrawal was necessary under Rule of Professional Conduct 1.7. .........8

     B.   The Mere Fact A Cyber Incident Occurred Is Not Sufficient To Allege
          That Defendants Breached The Duty To Safeguard Confidential
          Information. .........................................................................................10

II.  The Court Should Dismiss Plaintiff's Claim For Breach Of Fiduciary Duty. ..................12

III. The Court Should Dismiss Plaintiff's Claim For Breach Of Contract. ...........................13

IV.  All Three of Plaintiff's Claims Should be Dismissed Because Plaintiff Does Not
     Allege (and Cannot Allege) That Defendants' Actions Caused Actual Damages. ............15

     A.   All Plaintiff's Claimed Damages From The Cyber Incident Are Either
          Speculative Or Predated The Incident. ................................................15

     B.   Plaintiff Also Does Not Properly Allege That Defendants' Withdrawal
          Caused Damages Because His Allegations Are Refuted by His Own
          Complaint. ...........................................................................................19

V.   The Court Should Dismiss Plaintiff's Claim For Punitive Damages With
     Prejudice Because Plaintiff Does Not Meet The High Standard. .....................................21

CONCLUSION .....................................................................................................23

i

# TABLE OF AUTHORITIES*

**Page(s)**

CASES

*Anderson-Bey v. D.C.*, 466 F. Supp. 2d 51 (D.D.C. 2006) ............................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................5, 10, 11

*Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1 (D.D.C. 2019) ........................................................15

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ..........................................3

*Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575 (D.C. 2015) ............................................13

*Boynton v. Lopez*, 473 A.2d 375 (D.C. 1984) ...........................................................................22

*Caston v. Butler*, 718 F. Supp. 2d 87 (D.D.C. 2010) ................................................................22

*\*Chase v. Gilbert*, 499 A.2d 1203 (D.C. 1985) ................................................................6, 19, 21

*Dalo v. Kivitz*, 596 A.2d 35 (D.C. 1991) ..................................................................................22

*Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4 (D.D.C. 2013)................22, 23

*Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) ................................................ passim

*Hammerman v. Peacock*, 607 F. Supp. 911 (D.D.C. 1985)..........................................................22

*In re Lorazepam & Clorazepate Antitrust Litig.*, No. CV 03-1650 (TFH), 2004
    WL 7081446 ....................................................................................................... passim

*Marte v. Ltd. Brands*, No. CIV.A. 13-139 FSH, 2014 WL 1092503 (D.N.J. Mar.
    18, 2014) .......................................................................................................................22

*Morrison v. MacNamara*, 407 A.2d 555 (D.C. 1979) ................................................................11

*Mount v. Baron*, 154 F. Supp. 2d 3 (D.D.C. 2001)......................................................6, 15, 19, 21

*N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge
    & Rice, PLLC*, 887 F. Supp. 2d 78 (D.D.C. 2012) ....................................................13

*Nurriddin v. Bolden*, 818 F.3d 751 (D.C. Cir. 2016).....................................................................5

*O'Neil v. Bergan*, 452 A.2d 337 (D.C. 1982) .............................................................................13

---

* Authorities upon which Defendants chiefly rely are marked with an asterisk.

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018)..........................................5

*Park v. Reizes*, No. 06-CV-0843 GTS/GJD, 2009 WL 4893142, at *5 (N.D.N.Y. Dec. 15, 2009)........................................................................................................7

*\*Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697 (D.C. 2013) ........................................................................................................5, 6, 19, 21

*\*Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702 (D.C. 2009).......................2, 12, 15, 16

*Rodriguez v. Lab. Corp. of AmericaHoldings*, 13 F. Supp. 3d 121 (D.D.C. 2014) ......................14

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012) ...................................5

*Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017) .................................12

*Scott v. Burgin*, 97 A.3d 564 (D.C. 2014)...................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...................................2

*U.S. Telesis, Inc. v. Ende*, 64 F. Supp. 3d 65, 68 (D.D.C. 2014), *aff'd*, No. 14-7146, 2015 WL 653325 (D.C. Cir. Feb. 5, 2015) ......................................13, 19, 21

*Williams v. Patterson*, 681 A.2d 1147 (D.C. 1996) .....................................................19

OTHER AUTHORITIES

*Affirmative Asylum Interview Scheduling*, U.S. Citizenship and Immigration Service, https://www.uscis.gov/affirmative-asylum-scheduling (last visited November 10, 2019) ........................................................................................20

*Types of Asylum Decisions*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/humanitarian/refugees-asylum/asylum/types-asylum-decisions (last visited November 10, 2019)..............................................................7

*Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/I-94information (last visited Nov. 12, 2019)...............................................................17

*Immigration Court Backlog Tool*, https://trac.syr.edu/phptools/immigration/court_backlog/(last visited November 10, 2019) ........................................................................................20

*D.C. R. Prof. Conduct 1.16(a) ...............................................................................6, 8

*D.C. R. Prof. Conduct 3.7(a) ..................................................................................7

*D.C. R. Prof. Conduct 1.7(b)(4)..............................................................................8

D.C. R. Prof. Conduct 1.7, cmt. 11 .................................................................................................9

Plaintiff Guo Wengui's Complaint against his former asylum lawyer (Thomas Ragland) and Mr. Ragland's law firm (Clark Hill PLC) (collectively, "Defendants") for legal malpractice, breach of fiduciary duty and breach of contract should be dismissed with prejudice because plaintiff fails to adequately plead numerous elements of his claim and, more importantly, cannot do so as a matter of law.  Indeed, in his thirty-page Complaint, Plaintiff has pled himself out of court because his own allegations demonstrate that he lacks any viable claims.  As outlined in his Complaint, Plaintiff has spent much of the last decade publicly criticizing the Chinese government. This public criticism has led the Chinese government to embark on alleged retribution, which has been ongoing for years.  Plaintiff eventually applied for asylum in the United States—yet continued his public campaign against the Chinese government, and publicly disclosed his applying for asylum.

This publicity—generated by Plaintiff—was quickly followed by a cyberattack by the Chinese government directed at Clark Hill, to obtain information relating to Plaintiff.  Plaintiff now attempts to manufacture three causes of action and a request for punitive damages from this turn of events—which began with Plaintiff's own publicity about the filing of his asylum petition. All three of his causes of action rest on the assertion that Defendants breached various duties to Plaintiff because of (1) the cyber incident itself, and (2) Defendants' subsequently withdrawing from the representation after the incident.  However, neither action supports a claim.  Specifically, Plaintiff offers no factual allegations regarding how Defendants allegedly breached their duties to safeguard Plaintiff's information.  Additionally, not only does the firm's withdrawing from the asylum matter not constitute legal malpractice, withdrawal was appropriate—and in fact, required—because Defendants immediately became witnesses to China's alleged persecution of Plaintiff in the asylum case when the law firm was attacked.

Furthermore, under controlling law, Plaintiff has not pleaded how either of these actions caused him any actual damages, a necessary element to sustain his claims. *See Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009) (affirming dismissal of claim based on negligent conduct arising from a data incident for failure to plead "actual harm"). Plaintiff has alleged no harm to his asylum proceedings resulting from the withdrawal—nor could he, as his application remains pending. In an insufficient effort to plead some damages, Plaintiff relies on vague and general allegations that are undermined by his complaint; for example, he complains that he has lost unspecified "business opportunities," and suffered unspecified limitations on his travel. Complaint ¶¶ 56, 58. By his own account, however, Plaintiff's alleged damages from the cyber incident recites the same harassment and oppression that he has been suffering long before he retained Defendants (as demonstrated by his seeking asylum in the United States). Because Defendants' actions cannot have caused these harms, the Court should dismiss Plaintiff's complaint with prejudice.

## FACTUAL BACKGROUND

Plaintiff is a well-known Chinese dissident. Complaint ¶ 10. He acknowledges that his methods of criticizing the Chinese government involves "exposing" various secrets held by the Chinese government and Chinese officials. *Id.* ¶ 15. As a result of these public activities, the Chinese government has allegedly targeted Plaintiff (and his family and businesses) with threats, harassment, and misinformation campaigns going back at least five years. *Id.* ¶¶ 10, 16-27. Plaintiff retained Defendants to represent him in his application for asylum in the United States, so he could escape this persecution. *Id.* ¶ 28. A true and correct copy of the engagement letter memorializing Defendants' representation of Plaintiff, which Plaintiff incorporated into his Complaint (*see* Complaint ¶¶ 37, 76) is attached as Exhibit A. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (for a Rule 12(b)(6) motion, courts must consider

"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the contract itself.").

Plaintiff's public criticism of the Chinese government could only earn such ire from the Chinese government if he had an audience—which he does. Plaintiff airs his criticisms on social media posts, interviews, and videos. *See* Chun Han Wong and Felicia Schwartz, *China Wants Fugitive Guo Wengui Back—but He's Applied for U.S. Asylum*, Wall St. J. (Sept. 7, 2017), (attached as Exhibit B); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("Judicial notice is properly taken of publicly available historical articles[.]"); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. CV 03-1650 (TFH), 2004 WL 7081446, at *1 n.1, n.3 (D.D.C. May 18, 2004) (the Court may take judicial notice of matters of public record and newspaper articles). Plaintiff's YouTube page has nearly 800 videos, and he adds new ones nearly every day. *See*  https://www.youtube.com/channel/UCO3pO3ykAUybrjv3RBbXEHw/videos  (last visited November 10, 2019). The Complaint acknowledges all this publicity—Plaintiff notes that "the CCP [Chinese Communist Party] believes plaintiff presently holds not publicly known proof of various types of improper conduct on the part of the CCP[.]" Complaint ¶ 17. The CCP believes this because Plaintiff himself has said it—repeatedly.

In one of his videos, on September 7, 2017, Plaintiff announced that he had applied for asylum in the United States. Exhibit B (noting that Plaintiff announced asylum application in "live video broadcast"); *see also*  https://www.youtube.com/watch?v=aGjBsAB46fI,  at 15:25 (September 2, 2017 video announcing that in five days, Plaintiff will make "an important

announcement" relating to his "legal team" and his "visa"); https://www.youtube.com/watch?v=xW5TzUkUjrw (video of September 7, 2017).

Less than a week later, on or about September 12, 2017, Clark Hill PLC was cyberattacked by actors sponsored by the Chinese government. *See* Complaint ¶ 41. Plaintiff himself contends that China had directed the cyber incident to obtain Plaintiff's asylum information. Philip Wen, *China denies links to alleged cyber attacks in United States targeting exiled tycoon Guo*, Reuters (Oct. 8, 2017) (attached as Exhibit C); *see also Farah*, 736 F.3d at 534 (regarding judicial notice); *In re Lorazepam*, 2004 WL 7081446, at *1 n.1, n.3 (same). After the incident, the Defendants timely notified the Plaintiff, orally and in a letter to Plaintiff—which Plaintiff also incorporated into his Complaint. *See* Complaint ¶ 49. In the letter, Defendants confirmed that the cyber incident was "related to [Defendants'] representation of [Plaintiff]." A true and correct copy of the Withdrawal Letter is attached as Exhibit D.

Defendants informed Plaintiff that they were withdrawing as Plaintiff's counsel, because the cyber incident had placed the Defendants in the position of being potential witnesses to China's efforts to target Plaintiff, and therefore to his asylum proceedings. Complaint ¶ 49; Exhibit D. Defendants assured Plaintiff that they would assist him in transitioning his asylum request to successor counsel (which has occurred). Exhibit D. Because the asylum petition had just been filed and it would take months (if not years) for the government to contact the Plaintiff regarding his application, Plaintiff did not suffer any prejudice or delay in his asylum proceeding. *See* Complaint ¶ 38, 49. Plaintiff's asylum request remains pending. *Id.* ¶ 51. Despite these undisputed facts, Plaintiff now seeks damages from Defendants, including punitive damages, for legal malpractice, breach of contract, and breach of fiduciary duty.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts in the complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 678). The Court "need not accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018) (quoting *City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff who alleges facts that render success on the merits impossible pleads himself out of court. *Nurriddin v. Bolden*, 818 F.3d 751, 757 (D.C. Cir. 2016). Similarly, failure to adequately plead an element of a claim requires dismissal. *See id.* (dismissing cause of action when plaintiff's allegations did not "give rise to an inference" that all elements of the claim were present).

For the purposes of this Motion only, Defendants accept as true all well plead allegations in the Complaint. *Iqbal*, 556 U.S. at 678. However, if it ever becomes necessary, the Defendants will demonstrate that many of the material assertions in the Complaint are inaccurate.

The law of the District of Columbia governs Plaintiff's claims. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 714 (D.C. 2013) (District of Columbia law applied to claims of alleged misconduct by attorneys located in the District of Columbia, the engagement letter came from the law firm's District of Columbia office, and the relationship centered around the District of Columbia). The Complaint acknowledges that the substantial part of the Defendants' work to represent Plaintiff occurred in the District of Columbia. Complaint

¶ 14.  Plaintiff does not allege that any other state has a connection to the dispute.  *Cf. Anderson-Bey v. D.C.*, 466 F. Supp. 2d 51, 67 (D.D.C. 2006) (the purpose of a choice of law analysis is to assess whether another jurisdiction has a competing interest that its laws should govern).

## ARGUMENT

**I.**     **Plaintiff's Legal Malpractice Claim Fails Because He Can Not Allege That Defendants Breached A Duty To Plaintiff.**

To state a claim for legal malpractice, a plaintiff must allege (1) an attorney-client relationship existed, (2) the attorney breached a duty to the client, (3) that breach caused the client injury, and (4) actual damages.  *See Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985); *Mount v. Baron*, 154 F. Supp. 2d 3, 8 (D.D.C. 2001).  As a matter of law, Plaintiff cannot allege Defendants breached any of their duties to the Plaintiff.  Moreover, as demonstrated in Section IV below, Plaintiff cannot allege that the Defendants' actions caused Plaintiff any actual harm as required to sustain a legal malpractice claim.

### A.     Defendants' Withdrawal From The Representation Did Not Breach A Duty.

Plaintiff cannot show that Defendants breached any duty by withdrawing from the representation after the cyber incident.  Defendants' withdrawal was entirely proper under the District of Columbia Rules of Professional Conduct.  *Cf. Pietrangelo*, 68 A.3d at 710 (plaintiff could not state a claim for breach of fiduciary duty against attorney based on disclosing confidential information when attorneys did not violate rules of professional conduct).  An attorney must withdraw from representing a client if the attorney's ongoing representation would violate the Rules of Professional Conduct.  D.C. R. Prof. Conduct 1.16(a).  Once the cyber incident occurred, Defendants' ongoing representation would have violated multiple Rules, and therefore, they were required to withdraw from the representation.

**1.** **Withdrawal was necessary under Rule of Professional Conduct 3.7.**

The cyber incident put Defendants in the position of becoming witnesses in Plaintiff's asylum proceedings.  An attorney "shall not" act as an advocate for a client when the attorney is "likely to be a necessary witness" in the proceeding.  D.C. R. Prof. Conduct 3.7(a).  The cyber incident meant that Defendants were now direct witnesses to Plaintiff's own persecution by China. Given that China's prior persecution of Plaintiff formed the basis of Plaintiff's asylum claim, Defendants now found themselves as the only witnesses to a particular aspect of China's targeting of Plaintiff.  Because the facts surrounding the cyber incident support Plaintiff's asylum claim, Defendants became a necessary witness, and withdrawal was proper under the Rules of Professional Conduct.

This need for withdrawal was explained to Plaintiff in the withdrawal letter.  Exhibit D. Plaintiff's response is that this stated reason is a "sham."  Complaint ¶ 71.  But Plaintiff's response attempts to force Defendants to sidestep their ethical obligations.  For example, Plaintiff complains—two years after Defendants' withdrawal—that he had not asked Defendants to be witnesses, and that the matters relating to the cyber incident are uncontested, and thus fall into one of the limited exceptions to Rule 3.7(a).  *Id.* ¶ 51.  That is all pure speculation.  Plaintiff may be required to undergo an asylum hearing or submit new evidence, and Plaintiff cannot predict what evidence he would want or need to submit in the future.  *See Types of Asylum Decisions*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/humanitarian/refugees-asylum/asylum/types-asylum-decisions (last visited November 10, 2019) (noting that some asylum decisions require a court hearing or new evidence); *see also Farah*, 736 F.3d at 534 (regarding judicial notice); *In re Lorazepam*, 2004 WL 7081446, at *1 n.1, n.3 (same).  Plaintiff cannot speak for the U.S. government, and has no basis to state with certainty what matters will be uncontested or what witnesses it will call.  *Cf. Park v. Reizes*, No. 06-CV-0843 GTS/GJD, 2009 WL 4893142,

at *5 (N.D.N.Y. Dec. 15, 2009) (withdrawal was required because opposing party intended to call lawyer as witness).   Similarly, it is the lawyer's obligation to assess whether continuing a representation will violate the Rules of Professional Conduct, *see* D.C. R. Prof. Conduct 1.16(a)— therefore, it is the lawyer who must assess whether he or she is "likely" to be a witness.

Notwithstanding Plaintiff's currently-stated desire not to call Defendants as witnesses, circumstances may change as asylum proceedings progress.   Defendants' continued representation of Plaintiff would deprive him of the ability to make this decision if, as Plaintiff's asylum proceedings proceed, Plaintiff later decides that Defendants' testimony would be beneficial. Defendants' failure to withdraw would violate their duty to Plaintiff by depriving him of the ability to make that decision and to benefit from that testimony.   As a result, withdrawal was not only appropriate, but required.

### 2.   Withdrawal was necessary under Rule of Professional Conduct 1.7.

Withdrawal was also required under Rule 1.7(b)(4), which requires withdrawal if the lawyer's ability to represent a client "reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests."   D.C. R. Prof. Conduct 1.7(b)(4).   When the cyber incident occurred, Defendants immediately had its own interests in investigating and mitigating the incident—which conflicted with their representation of Plaintiff.   Plaintiff's own allegations demonstrate this: Plaintiff complains that Defendants have not provided Plaintiff with sensitive information regarding the cyber incident, such as whether other client files have been compromised and the manner in which Defendants learned of the incident.   Complaint ¶ 46.

Moreover, the Rules contemplate the same type of "prior work" conflict when a client raises questions about a lawyer's earlier conduct in an ongoing matter.   The comments to the Rules explain that "if the probity of a lawyer's own conduct in a transaction is in serious question, it may

be difficult or impossible for the lawyer to give a client detached advice." D.C. R. Prof. Conduct 1.7, cmt. 11. That was the situation here—after the cyber incident, Plaintiff's questioning Defendants' conduct would have compromised Defendants' ability to provide objective advice on the same matter going forward. Withdrawal was necessary to avoid this risk.

Not only was the Defendant's withdrawal proper under the Rules of Professional Conduct, but it was expressly allowed and contemplated by the parties in the engagement letter. The engagement letter, which sets forth the scope of the representation and which Plaintiff incorporated into his complaint, expressly allowed Defendants to withdraw if Defendants "perceive that any conflicts arise that would compromise [Defendants'] ability to represent [Plaintiff]." Exhibit A at 3; *see* Exhibit A at 8. In other words, Defendants had the right, in their sole discretion, to withdraw if they perceived any conflict. As demonstrated above, Defendants were merely satisfying their professional obligations by withdrawing and ensuring Plaintiff received uncompromised representation going forward. Plaintiff cannot now raise this issue as part of his cause of action because he contractually agreed to allow Defendants to withdraw if they "perceived" any conflicts affecting Plaintiff's representation. Defendants have demonstrated such conflicts existed, or at the very least, Defendants perceived that such conflicts actually existed. Simply put, withdrawing from a representation does not constitute legal malpractice when it is done in an orderly fashion and the client has time to find replacement counsel. *Cf.* Complaint ¶ 51 (Plaintiff's asylum application has been pending since it was filed). That is exactly what occurred here.

Because the Rules of Professional Conduct mandated that Defendants withdraw from representing Plaintiff, and because withdrawal was consistent with the engagement letter, Plaintiff has not properly alleged that Defendants breached a duty by withdrawing from the representation.

**B.     The Mere Fact A Cyber Incident Occurred Is Not Sufficient To Allege That Defendants Breached The Duty To Safeguard Confidential Information.**

Plaintiff also does not sufficiently allege that Defendants breached their duty of confidentiality to Plaintiff.  Plaintiff's allegations assume that the mere fact of a cyber incident— perpetuated by a foreign government, against an individual that it frequently and relentlessly targeted—is by itself enough to allege that Defendants' information security system must have been so deficient as to breach a duty to Plaintiff.  This reasoning has two fatal flaws.

First, Plaintiff ignores his own role in the incident.  Not only is Plaintiff a persistent and frequent critic of China—which has taken retaliatory actions against Plaintiff in the past—he personally announced the fact that he had applied for asylum in a video that he posted on the Internet.  Plaintiff himself drew attention to his asylum application and sought publicity regarding the asylum proceedings.  Plaintiff's actions alerted China to his asylum application.  This provocation shows that this cyber incident is different from the stereotypical hacker, who attacks multiple targets to obtain millions of consumers' private information to facilitate identity theft.  This hack, on the other hand, was perpetuated by a foreign government intent on targeting only Plaintiff (a very public individual).  *See* Complaint ¶¶ 15-27.

Plaintiff simply assumes that because there was a cyber incident, Defendants must have put up "porous" and "unreasonable" security measures.  *Id.* ¶¶ 41-42.  Such speculative and vague allegations are insufficient to maintain a cause of action.  *See Iqbal*, 556 U.S. at 678.  To the contrary, this was an incident carried out or perpetuated by an aggressive foreign government that has sophisticated capabilities and experience in cyber warfare.  Jack Stubbs et al., *China hacked eight major computer services firms in years-long attack*, Reuters (June 26, 2019) (Exhibit E); Kevin Collier, *Chinese spies stole NSA hacking tools, report finds*, CNN (June 15, 2019) (Exhibit F).  Indeed, after Plaintiff's yacht was allegedly hacked by China, also in September 2017, Plaintiff

publicly stated that China "can obtain private correspondence and information from each and every American citizen if it wishes, and can do that very easily almost without any cost."  Bill Gertz, *Beijing Suspected in Hacking Yacht Owned by Chinese Billionaire*, Wash. Free Beacon (Sep. 8, 2017) (Exhibit G); *see* Exhibit C at 3 (noting that an organization scheduled to host a public appearance for Plaintiff announced it was the victim of a Shanghai-based cyber incident).  Plaintiff must allege more than the simple fact that a cyber incident occurred to support a claim that Defendants' breached their duty.

Second, perhaps recognizing that he cannot adequately plead a breach of any duty by Defendants, Plaintiff engages in rampant and inaccurate speculation in a failing effort to maintain a cause of action.  Specifically, Plaintiff argues that Defendants breached their duty "*if they delivered a 'ransom'*" of Plaintiff's information to third parties, in order to negotiate with the hackers.  Complaint ¶¶ 77, 86 (emphasis added).  But Plaintiff does not allege that Defendants actually ransomed Plaintiff's information because that did not occur.  Similarly, Plaintiff hypothesizes that the cyber attackers hacked Defendants' information system "*apparently* without great difficulty."  *Id.* ¶ 41 (emphasis added).  These allegations attempt to disguise speculation as plausibility and are insufficient as a matter of law.  *See Iqbal*, 556 U.S. at 678.

In fact, Plaintiff alleges that Defendants breached a duty because their security measures failed, "whatever they were."  Complaint ¶ 42.  This amounts to circular, after-the-fact logic: Defendants were attacked, therefore the security measures *must* have been so insufficient that Defendants breached their duty, no matter what security measures Defendants took.  The mere fact of a cyber incident does not mean Defendants breached a duty; a relentless foreign government is always a cyber risk when focused on one individual's information even though Defendants took reasonable care.  *See Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979) (noting that the

standard of care in legal malpractice cases is "that degree of reasonable care and skill expected of lawyers acting under similar circumstances").

Courts allow complaints based on data incidents to survive when they allege facts—not conclusory allegations—indicating that defendants did not take reasonable care.  *See Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (denying motion to dismiss when complaint alleged that defendant "failed to take reasonable steps to prevent the wrongful dissemination of Plaintiffs' [personally identifiable information]—including erecting a digital firewall, conducting data security training and adopting retention and destruction policies").  But here, Plaintiff does not attempt to explain how Defendants failed to act with reasonable care—he simply assumes that they did.  By this logic, even the best possible security measures would be so deficient as to be unreasonable if a sophisticated and determined foreign government was able to overcome them.  These allegations improperly focus solely on the outcome, not whether Defendants breached a duty.

For the same reason, Plaintiff's theory that Defendants breached a duty simply by taking on the representation also fails—Plaintiff does not explain how Defendants breached a duty by doing so.  The mere fact of the cyber incident is insufficient to support an allegation that the matter was beyond Defendants' competence.  *See* Complaint ¶ 45.

In sum, Plaintiff has not alleged that Defendants breached a professional duty to Plaintiff, through either their withdrawal from the representation or from the cyber incident.  This Court should dismiss Plaintiff's malpractice claim with prejudice.

## II.     The Court Should Dismiss Plaintiff's Claim For Breach Of Fiduciary Duty.

Plaintiff's breach of fiduciary duty claim must be dismissed for the same reasons as the malpractice claim—Plaintiff does not sufficiently allege that Defendants breached a duty.  *See Randolph*, 973 A.2d at 709 (finding that a breach of fiduciary duty claim must be dismissed "[f]or

12

much the same reason" as a dismissed negligence claim, when the fiduciary duty claim arose from the same facts and circumstances as the negligence claim).  "In a professional malpractice case, additional claims which are based on the underlying malpractice claim cannot survive if the professional malpractice claim fails."  *U.S. Telesis, Inc. v. Ende*, 64 F. Supp. 3d 65, 68 (D.D.C. 2014), *aff'd*, No. 14-7146, 2015 WL 653325 (D.C. Cir. Feb. 5, 2015) (quoting *Mawalla v, Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008)); *see Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 582 (D.C. 2015) ("[O]ur disposition of the claim of legal malpractice applies with equal force to the claim of breach of fiduciary duty." (quoting *Mills v. Cooter*, 647 A.2d 1118, 1120 n.6 (D.C. 1994))).

Moreover, the breach of fiduciary duty claim must be dismissed because the fiduciary duty claim and the legal malpractice claim are duplicative.  "[W]hen the basis for a claim of fiduciary breach arises from the same facts and seeks the same relief as a negligence claim, such a claim becomes redundant and therefore it should be dismissed."  *Bolton*, 110 A.3d at 582; *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 83-84 (D.D.C. 2012) (collecting cases).  Here, the same facts underlie both the legal malpractice claim and the breach of fiduciary duty claim—both are based on Defendants' alleged failure to protect against the cyber incident and the withdrawal from representing Plaintiff, and allege the exact same damages.  *See* Complaint ¶¶ 68-74, 83-88.  The Court should dismiss Plaintiff's breach of fiduciary duty claim with prejudice.

## III.   The Court Should Dismiss Plaintiff's Claim For Breach Of Contract.

Plaintiff's breach of contract claim is also duplicative of the legal malpractice claim.  *See N. Am. Catholic Educ. Programming Found.*, 887 F. Supp. 2d at 83-84 (explaining that breach of contract claims, like breach of fiduciary duty claims, must be dismissed as duplicative "when arising from the same circumstances and seeking the same relief as a malpractice claim"); *O'Neil*

*v. Bergan*, 452 A.2d 337, 343 (D.C. 1982).  The Court should dismiss the breach of contract claim for this reason alone.

Even if the Court were to examine the elements of a breach of contract claim, it must dismiss the claim because Plaintiff fails to adequately plead the cause of action.  A claim for breach of contract under District of Columbia law requires "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Rodriguez v. Lab. Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 134 (D.D.C. 2014) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).  Here, Plaintiff acknowledges that the parties entered into a written agreement—the engagement letter.  *See* Complaint ¶ 76 ("[Defendants] entered into a written contract with plaintiff for the firm to represent the plaintiff."); ¶ 34 (alleging that the engagement letter "created and formalized contractual" duties); Exhibit A.  By its terms, the engagement letter "sets forth the respective obligations and expectations" of the parties, and could be modified only in writing.  Exhibit A at 1, 5.  Accordingly, the engagement letter was the contract.

Plaintiff does not allege how Defendants breached the engagement letter, and without such an allegation, the claim must be dismissed.  Perhaps recognizing this deficiency, Plaintiff attempts to allege that Defendants had a separate agreement to safeguard Plaintiff's information above and beyond the express requirements of the contract.  Complaint ¶ 33.  But Plaintiff alleges no facts about the formation of this additional "agreement" because it did not exist.  Nor could he—the engagement letter expressly states that the contract between the parties can be modified only in writing.  Plaintiff has not alleged that this purported separate agreement was in writing.  For all of these reasons, the Court must also dismiss Plaintiff's breach of contract claim with prejudice.

**IV.** **All Three of Plaintiff's Claims Should be Dismissed Because Plaintiff Does Not Allege (and Cannot Allege) That Defendants' Actions Caused Actual Damages.**

As an initial matter, Plaintiff claims damages of $50 million, but does not explain (in any way, shape, or form) how he arrived at that figure. Furthermore, Plaintiff has not alleged the actual damages necessary to sustain any of his tort claims. He complains of persecution at the hands of the Chinese government—but this persecution began long before the cyber incident. Plaintiff has not explained how the persecution has increased or worsened, or how the cyber incident caused any *new* tangible harm. Nor could he. This fatally dooms his complaint.

To sustain a tort claim for legal malpractice or breach of fiduciary duty, a plaintiff must show *actual* injury caused by the defendant. *Randolph*, 973 A.2d at 708-09 (regarding claims based on negligence); *Mount*, 154 F. Supp. 2d at 8 (legal malpractice requires "actual loss or damage resulting from [the attorney's] negligence" (quoting *Shapiro, Lifschitz & Schram v. R.E. Hazard, Jr.*, 24 F. Supp. 2d 66, 75 (D.D.C. 1998))). This same standard applies to breach of contract claims. *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 9-10, 12 (D.D.C. 2019).

**A.** **All Plaintiff's Claimed Damages From The Cyber Incident Are Either Speculative Or Predated The Incident.**

Plaintiff alleges two types of speculative damages from the cyber incident: his fears of future harm resulting from the data incident, and the array of general and vague damages purportedly inflicted by the Chinese government, which has been ongoing for years. *See* Complaint ¶ 10. Neither of these can support his claims.

The District of Columbia Court of Appeals has squarely addressed the injury necessary to support a tort claim stemming from a data incident, and based on this controlling case law, Plaintiff's allegations are insufficient. In *Randolph v. ING Life Insurance and Annuity Co.*, burglars stole a laptop computer from an ING Agent's home containing—without any encryption or password protection—personal information of participants in a deferred compensation plan that

ING oversaw.  973 A.2d at 704-05.  This personal information included addresses and Social Security numbers.  *Id.* at 704, 706.  The plaintiffs sued ING, alleging a number of tort claims, including negligence, gross negligence, and breach of fiduciary duty, alleging that they suffered (1) the risk of their identities being stolen, (2) the cost of credit monitoring and other security measures, and (3) the physical danger posed to some plaintiffs (who were police officers) by "those who may harbor ill-will toward police."  *Id.* at 708-09.

The district court dismissed the complaint, and the court of appeals affirmed the dismissal of the complaint in its entirety.  The court held that all three of the types of harm alleged amounted to a risk of future harm, and therefore did not sustain the plaintiffs' claims.  *Id.*  In doing so, the court explained that "[s]peculative harm, or the threat of future harm—not yet realized does not suffice to create a cause of action for negligence."  *Id.* at 708 (quoting *In re Estate of Curseen v. Buchanan Ingersoll, P.C.*, 890 A.2d 191, 194 (D.C. 2006)).

It is the same here.  Plaintiff's claims are far more speculative than those in dismissed in *Randolph* for three reasons.  First, the only damages that Plaintiff attempts to link to the cyber incident are unspecified lost business opportunities, unspecified "costs and expenses," and unspecified "damages to his personal and professional reputation."  Complaint ¶ 56.  These allegations are so general, Plaintiff does not even identify his "business" or explain how it (a non-party) was harmed.  He complains that his asylum application has surfaced on the Internet, but cannot explain how this has actually harmed him.  Plaintiff's criticisms of China were well-known and widespread for years *before* the incident.  *See id.* ¶ 10.  Plaintiff has not explained how his asylum application contained any information or criticisms of China that Plaintiff himself had not already placed in the public sphere—indeed, asylum applications are necessarily based on recounting *past* persecution by the applicant's home country.

Plaintiff states only that the information has "lost its confidential status," and that there is unspecified "cause to believe" that others *might* have used this information to harm him. *Id.* ¶¶ 9, 57. This is precisely the kind of speculative damages rejected by *Randolph*. There, the fear of future harm generated by compromised Social Security numbers and addresses did not sufficiently allege actual damages. Similarly, Plaintiff complains only that information was hacked—he does *not* allege facts as to how this alleged disclosure has or will harm him. Indeed, it is unlikely that Plaintiff could ever show that any of the information he alleges was stolen could damage him at all—for example, an I-94 number, which Plaintiff alleges was in the information, is simply a number issued to any visitor to the United States. *See* Complaint ¶ 43; *Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/I-94information (last visited Nov. 12, 2019). Nor has Plaintiff alleged any damage from the publication of his passport number (again part of the information, *see* Complaint ¶ 43)—which would be unlikely, given that anyone attempting to travel under Plaintiff's name would face the well-publicized Interpol arrest notices. This contrasts with the information lost in *Randolph* (social security numbers), which could facilitate identity theft, and yet still was insufficient to state a claim.

Second, Plaintiff recites the litany of harm he has suffered at the hands of the Chinese government—but by his own admission, these harms have been ongoing for years before he hired Defendants. *See* Complaint ¶¶ 23-24. For example, as early as January 2015, Plaintiff alleges that he "rightly feared being arrested, detained, interrogated, tortured, and/or killed by the Chinese government and/or the CCP." *Id.* ¶ 19. Yet, after the cyber-incident, he complains that his personal safety is at risk—just as it was before. *Id.* ¶ 56. Prior to the incident, Plaintiff alleges that the Chinese government often arrested and detained his colleagues and his employees were arrested

and detained, and that he feared for the safety of his family and friends. *Id.* ¶¶ 16, 19. After the cyber-incident, he alleges that the Chinese government continues to detain his employees and harass his family—with no explanation how this has increased or worsened after the incident, or, more importantly, that the cyber incident caused any increase or worsening of such harm. *See id.* ¶ 56. Plaintiff complains that he has limited freedom to travel as a result of the incident, *id.* ¶ 58—but he acknowledges that the Chinese government issued an Interpol "red notice" limiting his ability to travel—before the cyber incident. *Id.* ¶ 21; *China says Interpol seeks arrest of tycoon Guo Wengui*, BBC News (Apr. 20, 2017) (Exhibit H) (Interpol red notice was issued in April 2017); *see also Farah*, 736 F.3d at 534 (regarding judicial notice); *In re Lorazepam*, 2004 WL 7081446, at *1 n.1, n.3 (same). More specifically, Plaintiff does not explain how the cyber incident limited his freedom to travel beyond the restrictions that already existed, or how to quantify any such limitation after the incident. As a result, Plaintiff does not allege any actual injury that began (or even worsened) after the cyber-incident. Without pleading facts to support damages caused by Defendants' conduct, Plaintiff's Complaint fails to state a claim.

Third, Plaintiff cannot sustain a claim based on damages to his businesses, or on behalf of his employees, even if he had alleged what those damages were. A legal malpractice claim based on damages to a third party requires that the third party be the intended beneficiary of the legal services. *See Scott v. Burgin*, 97 A.3d 564, 566 (D.C. 2014). That is not the case here—Plaintiff has not pleaded any facts that Defendants provided legal services to his businesses. *See* Exhibit A.

In sum, even if the Court were to determine that these ongoing damages inflicted by China represented "actual harm," Plaintiff does not allege that any of these harms were caused by the cyber incident. As explained above, by his own words, Plaintiff acknowledges that he has been suffering harm at the hands of the Chinese government for years—due to his own outspoken and

frequent advocacy. Indeed, that is why Plaintiff filed his asylum application in the first place. That all of Plaintiff's non-speculative harms have been ongoing since at least 2015 demonstrates that Plaintiff has not alleged, and cannot allege, that the cyber incident at Defendants' offices itself caused any actual harm. *Cf. Williams v. Patterson*, 681 A.2d 1147, 1150 (D.C. 1996) ("The law is settled that where an accident does not cause a diseased condition, but only aggravates and increases the severity of a condition existing at the time of the accident, such party could only recover for such increased or augmented sufferings as were the natural and proximate result of the negligent act." (quoting *Baltimore & Ohio Railroad Co. v. Morgan*, 35 App. D.C. 195, 200 (1910))).

**B.    Plaintiff Also Does Not Properly Allege That Defendants' Withdrawal Caused Damages Because His Allegations Are Refuted by His Own Complaint.**

Plaintiff complains of three types of damages he has suffered due to Defendants' withdrawal as his attorneys in the asylum case, but none of them show the actual harm needed to support his claims. A claim for legal malpractice requires that the "attorney's negligence caused a legally cognizable injury," and "more is required than speculation." *Chase*, 499 A.2d at 1212; *see Pietrangelo*, 68 A.3d at 713 ("Pietrangelo does not allege sufficient facts showing causation or resulting non-speculative harm from WilmerHale's breach of its professional duty."); *U.S. Telesis*, 64 F. Supp. 3d at 68 ("UST has not sufficiently pleaded that defendants' conduct caused it to lose its damage claims in the underlying case."); *Mount*, 154 F. Supp. 2d at 9-10 (dismissing complaint where "there is no basis to conclude from the complaint that the jury's verdict would have been any different had other law firms (and claims) been included").

Plaintiff first speculates that Defendants' withdrawal from representing him delayed his asylum proceedings. Complaint ¶ 56. Plaintiff pleads such vague and speculative damages because he concedes his asylum petition is still pending. But he offers no reason to infer that the

19

attorney representing an asylum seeker has any bearing on the speed with which the U.S. government schedules asylum proceedings.  By the time Defendants withdrew, the asylum application was filed, at which point Plaintiff had to wait for the government to act by scheduling an initial asylum interview.  Initial asylum interviews are known to take years to schedule.  *See Affirmative Asylum Interview Scheduling*, U.S. Citizenship and Immigration Service, https://www.uscis.gov/affirmative-asylum-scheduling (last visited November 10, 2019) (noting that asylum interview scheduling was changed in January 2018 to a last-in-first-out basis, meaning that older filings like Plaintiff's will be addressed only after more recent filings); *see also Immigration Court Backlog Tool*, https://trac.syr.edu/phptools/immigration/court_backlog/ (last visited November 10, 2019) (showing average wait time of 761 days and over 100,000 pending cases for hearing location in New York City); *see also Farah*, 736 F.3d at 534 (regarding judicial notice); *In re Lorazepam*, 2004 WL 7081446, at *1 n.1, n.3 (same).  Therefore, the change in counsel shortly after filing the application did not cause any delay.

Second, Plaintiff complains that he has been denied the benefit of Defendants' immigration law expertise.  Complaint ¶ 56.  But Plaintiff does not allege that he has been unable to obtain qualified successor counsel.  Nor does he allege that Defendants are the only lawyers who could successfully handle his asylum application.  Plaintiff acknowledges that his asylum application is still pending—meaning that successor counsel has had over two years to prepare for the interview and potential hearing.  This is not a case of counsel causing prejudice by abandoning a client on the eve of trial.

Third, Plaintiff alleges that he suffered reputational harm because the withdrawal somehow indicates that Plaintiff is "untrustworthy."  *Id.* ¶ 60.  This is again purely speculative, and not the

type of "actual harm" required by the law. Plaintiff has not plead who (if anyone) was aware of Defendants' withdrawal in this matter or how it changed their opinion of Plaintiff.

Plaintiff speculates that the outcome of his asylum proceedings will be worse than if Defendants had not withdrawn. *See id.* ¶ 60. But speculation about the outcome of legal proceedings is precisely the kind of allegation that cannot sustain a legal malpractice claim. *See Pietrangelo*, 68 A.3d at 710 (dismissing causes of action that were based on abstract allegations that if the attorneys in the underlying action had acted differently, the court would have ruled in the plaintiff's favor); *Chase*, 499 A.2d at 1212 (affirming dismissal of legal malpractice counterclaim because counter-plaintiff's claim that outcome of underlying proceedings would have been different was speculative). Plaintiff does not identify any adverse action in his asylum proceedings, much less one that was caused by Defendants' actions. Obviously, if Plaintiff is ultimately granted asylum, he will have suffered no damages from the withdrawal as a matter of law. *See U.S. Telesis*, 64 F. Supp. 3d at 68; *Mount*, 154 F. Supp. 2d at 9-10.

Moreover, Plaintiff similarly has not adequately alleged that the withdrawal *caused* cognizable injuries to Plaintiff. To sufficiently allege causation, Plaintiff must allege that Defendants' negligence caused him to lose a meritorious claim. *See U.S. Telesis*, 64 F. Supp. 3d at 68. By Plaintiff's own admission, his asylum claim remains pending, so he cannot allege any negative effect on his ability to obtain asylum.

Because Plaintiff cannot allege that the withdrawal caused him any harm, the claims based on the withdrawal must be dismissed with prejudice as a matter of law.

**V.      The Court Should Dismiss Plaintiff's Claim For Punitive Damages With Prejudice Because Plaintiff Does Not Meet The High Standard.**

Plaintiff alleges that Defendants acted "intentional[ly]," "reckless[ly]," and committed "fraud," but alleges no facts—none whatsoever—to support these conclusory allegations.

21

Complaint ¶¶ 62-64.  These bare conclusions are wholly insufficient to meet the Rule 12(b)(6) pleading standard, and the court should dismiss the claim for punitive damages with prejudice. *See Caston v. Butler*, 718 F. Supp. 2d 87, 89 (D.D.C. 2010) ("conclusory claims" of "outrageous or reckless conduct do not provide a basis for [a punitive damages] award").  In essence, Plaintiff is asking the court to assume "reckless" conduct occurred without providing any basis for such conclusions.  This flips the pleading standard on its head.

Moreover, Plaintiff's allegations do not state a claim for punitive damages.  To recover punitive damages against an attorney, a defendant must act with actual malice or willful disregard of the plaintiff's rights.  *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 13 (D.D.C. 2013); *Dalo v. Kivitz*, 596 A.2d 35, 40 (D.C. 1991) ("[P]unitive damages are appropriately reserved only for tortious acts which are replete with malice." (quoting *Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C. 1989))).  "[F]or punitive damages, actions do not become more egregious simply because of the professional obligations of the person committing them."  *Boynton v. Lopez*, 473 A.2d 375, 378 (D.C. 1984).  The Court can dismiss a claim for punitive damages under Rule 12(b)(6) when the Plaintiff does not allege facts that allow the Court to "infer the level of callousness necessary for punitive damages." *Marte v. Ltd. Brands*, No. CIV.A. 13-139 FSH, 2014 WL 1092503, at *5 (D.N.J. Mar. 18, 2014); *see Hammerman v. Peacock*, 607 F. Supp. 911, 919 (D.D.C. 1985) (dismissing claim for punitive damages for common law tort and contract claims, and explaining that "punitive damages are awardable only where the defendant's conduct was particularly outrageous, demonstrating reckless disregard for the rights of others, and mere inadvertence or even gross negligence is insufficient").

This high standard is not even close to being met here; Plaintiff has not alleged any facts indicating that Defendants acted with malice or willfully disregarded the Plaintiff's rights, and, as

demonstrated above, he cannot do so.  Courts have rejected punitive damages requests with far more egregious conduct.  For example, in *Embassy of Federal Republic of Nigeria v. Ugwuonye*, a client sought punitive damages against its former attorney who had stolen the client's tax refund and deposited it in his law firm's account, while continuing to tell the client that the tax refund was forthcoming, and never returned the refund.  297 F.R.D. at 7.  The Court declined to award punitive damages because the client had not shown that the attorney acted with the required malice.  *Id.* at 14.  Defendants' alleged behavior is nowhere near as egregious (indeed, it was all ethical and in the client's best interest), and thus Plaintiff has not adequately alleged facts to support a claim for punitive damages.

## CONCLUSION

Plaintiff does not sufficiently allege that Defendant's actions or inactions caused him any actual harm—the only harms he allegedly suffered are ones that have been ongoing for years before the cyber incident.  Any "new" harm is totally speculative.  Plaintiff also does not allege that Defendants breached any duty they owed to him—he simply blames them for acting in an ethical manner and for a data incident, precipitated by his own publicity, which has caused him no harm.  All three of his alleged causes of action are duplicative of one another.  Finally, he offers no facts that support his claim for punitive damages.  The Court should dismiss the entire Complaint with prejudice.

Dated: November 25, 2019                            Respectfully submitted,

                                                    CLARK HILL PLC and
                                                    THOMAS K. RAGLAND

                                                    By: */s/   John R. Storino*
                                                            One of their attorneys

John R. Storino
*(via pro hac vice)*
JENNER & BLOCK, LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
JStorino@jenner.com

Kali N. Bracey (#458965)
JENNER & BLOCK, LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001-4412
Tel: (202) 639-6000
KBracey@jenner.com

### CERTIFICATE OF SERVICE

   I, John R. Storino, an attorney, hereby certifies that I served the foregoing Memorandum in Support of Defendants' Motion to Dismiss on the following by electronic on this, the 25th day of November, 2019:

      Ari S. Casper
      Ralph S. Tyler
      The Casper Firm
      400 E. Pratt Street, Suite 903
      Baltimore, MD 21202


          */s/  John R. Storino*