IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


GUO WENGUI a/k/a MILES KWOK a/k/a HO WAN KWOK,
Plaintiff,

v.

CLARK HILL PLC, *et al.*,
Defendants.

Case No. 1:19-cv-03195-JEB


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


Ari S. Casper (#471013)
Ralph S. Tyler (#357087)
The Casper Firm, LLC
400 East Pratt St., Suite 903
Baltimore, MD 21202
Tel: 410-989-5097
Fax: 410-630-7776
acasper@casperfirm.com
rtyler@casperfirm.com


January 10, 2020                    *Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS OF PLAINTIFF'S COMPLAINT ...................................................... 4

A.   Plaintiff retains the Clark Hill law firm to represent him in connection with plaintiff's application for asylum in the United States. ............................................................... 4

B.   Clark Hill fails to protect from widespread public dissemination plaintiff's confidential information........................................................................................................ 6

C.   Without good cause, Clark Hill quickly "fires" plaintiff as a client. .................................. 8

D.   Plaintiff is damaged by Clark Hill's undisputed failure to protect his confidential information, and then plaintiff suffers additional harm caused by the firm's withdrawal from representing plaintiff. ............................................................................................ 9

E.   Plaintiff has alleged sufficient facts to sustain his claim for punitive damages. .............. 10

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT .................................................................................................................. 12

BECAUSE PLAINTIFF'S COMPLAINT ALLEGES SUFFICIENT FACTS TO SUSTAIN EACH AND ALL OF THE CLAIMS IN THE COMPLAINT, DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY...........................................................12

I.   Count I of plaintiff's complaint states a cause of action for defendants' breach of fiduciary duty. ................................................................................................................ 12

A.   Plaintiff's complaint alleges facts showing an attorney-client relationship between plaintiff and defendants and that defendants owed plaintiff a fiduciary duty...................... 12

B.   Plaintiff's complaint alleges facts showing that defendants breached their fiduciary duty to plaintiff. ......................................................................................................... 14

1.   Defendants breached their fiduciary duty to protect plaintiff's information from public  dissemination. ......................................................................................... 14

2.   Defendants breached their fiduciary duty of loyalty to plaintiff............................. 18

C.   Plaintiff's complaint alleges facts showing plaintiff has been injured by defendants' breaches of their fiduciary duties to plaintiff. ...................................................................... 22

1.   The complaint alleges specific harms and injuries caused by the improper widespread public dissemination of plaintiff's confidential information. ........................ 22

2.   The complaint alleges specific harms and injuries caused by defendants' improper abandonment of their client. ...................................................................................... 24

II.   Count II of plaintiff's complaint states a cause of action for defendants' breach of the parties' contract for legal representation......................................................................... 27

III.   Count III of plaintiff's complaint states a negligence (legal malpractice) cause of action against defendants. ......................................................................................................... 29

IV.    Defendants' miscellaneous alternative arguments for dismissal are meritless. ............ 34

V.    Plaintiff's complaint more than sufficiently pleads that defendants caused plaintiff to suffer actual damages for which plaintiff is entitled to seek relief in this case. ....................... 37

VI.    Plaintiff's complaint alleges sufficient facts to state a claim for punitive damages. ..... 39

CONCLUSION ................................................................................................................ 41

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................... 11

*Ass's of Am. Med. Coll. v. The Princeton Review,* 332 F. Supp. 2d 11 (D.D.C. 2004) ............... 11

*Attias v. CareFirst, Inc.,* 365 F. Supp. 3d 1 (D.D.C. 2019) ..................................................... 14, 36

*Attias v. CareFirst, Inc.,* 865 F.3d 620 (D.C. Cir. 2017) ............................................................. 25

*Bd. of Tr. of Univ. of Dist. Columbia v. DiSalvo,* 974 A. 2d 868 (D.C. 2009) ............................ 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 11

*Bolton v. Crowley, Hoge & Fein, P.C.,* 110 A.3d 575 (D.C. 2015) ................................. 13, 15, 18

*Buruca v. District of Columbia,* 902 F. Supp. 2d 75 (D.D.C. 2012) ............................................ 26

*Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114 (D.D.C. 2013) ................................................. 11

*Chase v. Gilbert,* 499 A.2d 1203 (D.C. 1985) ...................................................................... 29, 30

*Command Consulting Group, LLC v. Neuraliq, Inc.,* 623 F. Supp. 2d 49 (D.D.C. 2009) 11, 12, 13

*Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826 (7th Cir. 2018) ........................................... 22

*EEOC v. Sears Roebuck & Co.,* 243 F.3d 846 (4th Cir. 2001) ..................................................... 21

*Fara v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) ........................................................... 7

*Geleta v. Gray,* 645 F.3d 408 (D.C. Cir. 2011) .................................................................... 21, 32

*Hedgepath v. Whitman Walker Clinic,* 22 A.3d 789 (D.D.C. 2011) ................................ 14, 15, 36

*In Re Equifax, Inc., Customer Data Security Breach Litigation,* 362 F. Supp. 3d 1295 (N.D. Ga. 2019) ............................................................................................................................. 23

*Kingman Park Civic Assoc. v. Williams,* 348 F.3d 1033 (D.C. Cir. 2003) ................................... 11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................................................. 26

---

[*]Authorities upon which plaintiff principally rely are marked with an asterisk.

*North Am. Catholic Educ. Programming Found. v. Womble, Carlyle, Sandridge & Rice, PLLC,* 887 F. Supp. 2d 78 (D.C. 2012) ........................................................................... 36, 37

*Odemns v. District of Columbia,* 930 A.2d 137 (D.D.C. 2007) ...................................... 14

*Office of Personnel Management Data Security Breach Litigation,* 928 F.3d 42 (D.C. Cir. June 21, 2019) ...................................................................................... 22, 24

*Randolph v. ING Life Ins. & Annuity Co.,* 973 A.2d 702 (D.D.C. 2009) ........................ 23, 25, 38

*Robertson v. Sea Pines Real Estate Companies, Inc.,* 679 F.3d 278 (4th Cir. 2012) .................. 11

*Sackin v. Transperfect Global, Inc.* 278 F. Supp. 3d 739 (S.D.N.Y. 2017) ................................ 16

*United States Telesis, Inc. v. Ende,* 64 F. Supp. 3d 65 (D.C. 2014) ...................................... 34, 35

*Wilson v. Government of the District of Columbia,* 269 F.R.D. 8 (D.D.C. 2010) ...................... 11

**Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 10

**Other Authorities**

D.C. Ethics Opinion 228 (May 1992) ............................................................................ 19

D.C. R. Prof. Conduct 1.1 ............................................................................................. 32

D.C. R. Prof. Conduct 1.3 ............................................................................................. 32

D.C. R. Prof Conduct 1.17 ....................................................................................... 20, 21, 32

D.C. R. Prof. Conduct 3.7 ........................................................................................ 19, 20, 32

**Treatises**

Mallen & Smith, *Legal Malpractice,* § 15.2 (2008 ed.) ................................................ 36

**Regulations**

8 C.F.R. § 1208.6 ............................................................................................................ 9

8 C.F.R. § 1208.9 ............................................................................................................ 19

## INTRODUCTION

Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss seeks dismissal, with prejudice, of all claims in plaintiff's complaint.  Defendants' motion should be denied because plaintiff's complaint alleges, with more than the required degree of specificity, multiple viable causes of action.  Rather than accepting as true all of the allegations of plaintiff's complaint (as well as the reasonable inferences of those allegations), defendants ignore the detailed allegations of plaintiff's complaint and, instead, argue as if plaintiff has a burden in the complaint to *prove, rather to allege*, his claims.  Defendants' arguments are, at best, premature.  After discovery, defendants can, if they so choose, put forward their presently factually untested assertion that they are without fault.

Plaintiff Guo Wengui ("plaintiff") was a client of the defendant Clark Hill PLC law firm, and defendant Mr. Thomas Ragland was plaintiff's principal lawyer at Clark Hill (defendants are referred to collectively as "defendants" or the "firm").  The client-attorney relationship which plaintiff had with defendants imposed clear duties on defendants to protect plaintiff's confidential and sensitive personal information from unauthorized public disclosure, to be loyal, and to represent plaintiff with a reasonable degree of competence and diligence.  Plaintiff's complaint alleges that defendants failed in all respects.

Defendants failed, for example, to protect plaintiff's confidential information, after not taking special protective measures despite committing to do so.  Because of defendants' failures, plaintiff's confidential information was disseminated literally globally.  Defendants were also disloyal.  Without cause or justification, defendants "fired" their client, when the client most needed legal representation, in the moment of crisis when plaintiff's confidential information was splayed across the world wide web *because of defendants' abject failure to protect the information*.

1

Plaintiff's complaint states claims against defendants for breaching their fiduciary duty to plaintiff, for breaching the parties' contract for legal representation, for legal malpractice, and for punitive damages. As to each claim, the complaint sets forth more than legally sufficient factual allegations which, when proven, will establish defendants' liability and that plaintiff is entitled to significant compensatory and punitive damages. *See* Complaint *passim* (ECF No. 1).

Defendants' motion to dismiss memorandum ("Defendants' Memorandum") (ECF No. 12-1) largely ignores the allegations of the complaint. Defendants' approach, instead, is to clip snippets from the complaint, quote them without context, and not quote whole sentences, let alone paragraphs, all in a deliberate, but ultimately unsuccessful, effort to build the argument that, somehow, plaintiff's complaint does not meet the pleading requirements of the Federal Rules. Defendants ignore, for example, the complaint's detailed allegations regarding defendants' failure to protect plaintiff's confidential information. These allegations include that plaintiff forewarned defendants of the risks of a cyberattack of the firm's electronic systems seeking plaintiff's materials; the firm undertook the representation of plaintiff (and plaintiff agreed to retain the firm) only after the firm committed to take special precautions, such as not putting plaintiff's confidential and sensitive information on the firm's server, to prevent a third party from obtaining plaintiff's confidential information by attacking the firm's network; and rather than taking special measures, the firm, in violation of their agreement, put plaintiff's materials on the firm's server.

Defendants do no better when they try to squirm away from their transparently wrongful conduct of abandoning their client at a moment of maximum need immediately following the cyberattack. Extremely sensitive details of plaintiff's life, including the contents of his highly confidential asylum application, which defendants prepared, were on the world wide web and available for all the world to view and exploit. These materials, which the firm was duty-bound

to keep confidential, received a global audience *because of the firm's failures,* and this audience included persons hostile and a threat to plaintiff.  In the midst of all of this, defendants "fired" plaintiff as a client.  Then, because defendants had no legitimate reason for "firing" plaintiff, they wrongfully sought to justify their legally and ethically improper action by putting forward a sham justification predicated upon a plainly inapplicable Rule of Professional Conduct.  The firm's explanation for abandoning their client continues to evolve.  Before this Court, defendants offer a brand new, but no less pretextual meritless, "justification."

Plaintiff retained the Clark Hill firm and, specifically, Mr. Ragland, a proclaimed immigration/asylum law expert, to obtain asylum because of plaintiff's political activities and outspokenness.  The firm, for its part, agreed to undertake the legal representation of plaintiff only *after* it represented and confirmed to plaintiff that the firm was able to represent plaintiff competently, including that the firm would and could protect plaintiff's confidential information from unrestricted public disclosure and dissemination.  Defendants now argue that plaintiff's political activities, the very reason he hired Clark Hill in the first place, somehow absolves defendants.  *See* Defendants' Memorandum, *e.g.*, at  10 ("plaintiff ignores his own role in the [cyberattack] incident").  Later in this case, at summary judgment or trial, if defendants wish to attempt to defend against plaintiff's allegations of fault with *admissible evidence* to support some twist on "contributory negligence," that is a choice they may be able to make.  They cannot do so now, however.  The narrow question at this stage is the legal sufficiency of the allegations in plaintiff's complaint.  Defendants' unsubstantiated self-serving "factual proffer" of plaintiff's alleged contributory role has no relevance in answering that question.

Defendants' motion to dismiss should be denied.

## ALLEGATIONS OF PLAINTIFF'S COMPLAINT

**A.** **Plaintiff retains the Clark Hill law firm to represent him in connection with plaintiff's application for asylum in the United States.**

Plaintiff Guo Wengui ("plaintiff") is a Chinese national who fled from China and emigrated to the United States.  Complaint ¶¶ 10, 19.[2]  Plaintiff was an outspoken political and human rights activist in China.  ¶¶ 10, 15-19.  Plaintiff established residence in the United States (New York City), and sought political asylum in the United States.  ¶¶ 10, 19, 28, 38.  His asylum claim is based on the harassment and oppression to which he was subjected in China because of his advocacy for human rights and related political activities.  ¶¶ 15-28, 38.

In connection with seeking political asylum in the United States, plaintiff retained the Clark Hill law firm and, specifically, Clark Hill partner Mr. Ragland.  ¶¶ 2, 34.  Clark Hill is a large national law firm of approximately 650 attorneys and professionals, with 25 offices, including an office in the District of Columbia.  ¶ 11.  Mr. Ragland is resident in the firm's Washington office, and he is licensed to practice law in the District of Columbia.  ¶ 12.  Mr. Ragland holds himself out as a leading immigration lawyer.  ¶ 28.

Mr. Ragland and the Clark Hill firm represented to plaintiff that Mr. Ragland and the firm were qualified, capable, and competent to represent plaintiff and to protect his interests fully and professionally.  ¶ 28, 30, 32-33.  Plaintiff relied upon these representations.  ¶ 28, 33.

Prior to plaintiff's retaining the firm, plaintiff explained to the firm that any law firm preparing his asylum application had to expect to be the subject of sophisticated cyberattacks.  ¶¶

---

[2] All paragraph citations in this section are to plaintiff's complaint.

31-32.  Plaintiff told Mr. Ragland and the firm that plaintiff and his associates had been the targets of such cyberattacks.  ¶ 32.

Mr. Ragland and his firm agreed to undertake the representation of plaintiff "with eyes wide open," and with full awareness and understanding of the cyber security and other potential risks involved.  ¶ 32.  The firm was on full notice ("high alert") that the representation of plaintiff would not be an "ordinary" representation with "ordinary" risks of unauthorized disclosure.  ¶ 35. The firm knew from the very outset, and prior to the firm's agreeing to undertake the representation of plaintiff, that special care and attention to security measures were necessary, required, expected, and agreed-to by the firm.  ¶¶ 32, 35.

Mr. Ragland and the firm agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive confidential information.  ¶ 33.  Such precautions would include *not* placing any of plaintiff's information on the firm's computer server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a "hacker" interested in obtaining the information.  *Id*.  The firm also committed and agreed to have the requisite security measures to protect plaintiff's confidential information and to otherwise provide plaintiff ethical and competent legal representation.  *Id.*  Had the firm not made these commitments, plaintiff would not have retained the firm.  ¶¶ 33, 54.

Despite the firm's commitments to take special precautions to protect plaintiff's information, including not placing his information on the firm's computer server, ¶ 33, the firm failed to do as it committed to do.  Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third parties, including to third parties not approved by plaintiff.  ¶ 39.  Mr.

Ragland's reckless and wanton conduct "opened the door wide" to the firm's server to potential "hackers" and thoroughly compromised the confidentiality of plaintiff's information. *Id.*

Plaintiff formally retained the Clark Hill firm in August 2018, when plaintiff, through his authorized representative, and defendants executed a letter retention agreement, and plaintiff paid the firm a retainer fee of $10,000.  ¶¶ 34, 36.  Among other things, that agreement provided that plaintiff, as the firm's client, had the right to "expect competent representation"; that the firm would "at all times act on [plaintiff's] behalf to the best of [the firm's] ability"; and that the firm's lawyers are subject to the District of Columbia Rules of Professional Conduct.  ¶ 37.

Plaintiff delivered sensitive personal information and confidential documents to defendants, as his counsel, so that defendants, as plaintiff's counsel, could complete plaintiff's asylum application.  ¶ 38.  Mr. Ragland prepared plaintiff's asylum application and he filed it with the United States Department of Homeland Security on September 5, 2017.  ¶ 38.

### B. Clark Hill fails to protect from widespread public dissemination plaintiff's confidential information.

The firm has acknowledged that on September 12, 2017, seven days after the firm filed plaintiff's asylum application, the firm's computer system was "hacked" by a third-party.  ¶ 41. The firm's demonstrably inadequate security and monitoring programs and Mr. Ragland's putting plaintiff's confidential information on the firm's server and transmitting plaintiff's confidential information via his firm email account failed to safeguard and, indeed, severely compromised, plaintiff's sensitive personal information and confidential documents.  ¶¶ 39-44; ¶ 42 ("The firm's security measures were inadequate, unreasonable, and fell woefully far short of defendants' promises, assurances, obligations, and commitments to provide adequate security measures, given

the circumstances of this case, in violation of defendants' contractual, common law, and professional duties to plaintiff.").

On September 23, less than two weeks after the firm's system was "hacked" and plaintiff's confidential materials, including his confidential asylum application and affidavit, were taken from the firm's computer system, plaintiff's sensitive personal information and confidential documents began to appear on the social media site Twitter.  *See* Bill Gertz, *FBI Eyes China in Posting Hacked Documents on Chinese Dissident: DC Law Firm Drops Guo Wengui Asylum Bid After Sophisticated Cyber Attack*, THE WASH. FREE BEACON (Sept. 29, 2017), https://freebeacon.com/national-security/fbi-eyes-china-posting-hacked-documents-chinese-dissident/ ("Portions of [plaintiff's] asylum application form . . . were published this month by a persona on Twitter identified only as "Spectre" (@twiSpectre).").[3]

In the years between the global dissemination of plaintiff's confidential information and the commencement of this litigation, Clark Hill has "stonewalled" as to the cause of the penetration of its computer network and systems.  ¶¶ 46-48.  The firm has refused to answer the direct question of "how did the attacker circumvent the firm's security measures."  ¶ 48.

The firm has acknowledged, however, that, at its direction, an investigation of the cyberattack was conducted.  ¶ 48, 53; *see also* Defendants' Memorandum Ex. D ("Our investigation regarding the nature and extent of the cyberattack is continuing.") (letter dated September 19, 2017, from Clark Hill's General Counsel).  Nevertheless, the firm has largely

---

[3] *See Fara v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (court may take judicial notice of publicly available articles").

refused to answer plaintiff's questions about "what happened," including refusing to produce the investigative report, asserting an unelaborated claim of "privilege." ¶ 48.[4]

### C.  Without good cause, Clark Hill quickly "fires" plaintiff as a client.

A mere seven days after the "hacking," on September 19, the firm unilaterally decided to "fire" plaintiff as their client.  ¶ 49.  The firm's General Counsel, Mr. Edward J. Hood, wrote to plaintiff stating that Clark Hill and Mr. Ragland were terminating their representation of plaintiff. *Id.*  The firm's "reason" for "firing" plaintiff as a client was that "the cyberattack will require Mr. Ragland – and possibly other members of the Firm – to be a witness in your asylum proceeding." *Id.*   Neither Clark Hill nor Mr. Ragland claimed that plaintiff was somehow at fault, causing the firm to terminate its representation, nor did Clark Hill or Mr. Ragland claim that plaintiff failed to meet his obligations to the firm.  ¶¶ 49, 52.

The firm's "reason" for firing plaintiff is without merit.  ¶¶ 50-52.  Plaintiff did not have an asylum interview, let alone any hearing, scheduled as of the date of his being fired as a client (and that remains the case); plaintiff had not asked that Mr. Ragland be a witness at the as of yet unscheduled interview; Mr. Ragland's "testimony" would relate, at most, to the uncontestable fact that the Clark Hill system was "hacked."  ¶ 51.  The firm's letter "firing" plaintiff as their client does not address any of these gaps in the firm's reasoning for withdrawing.  ¶ 51.[5]

---

[4] The firm makes this "privilege" claim despite the fact that it was the firm's client (plaintiff), *i.e.*, the party to whom the firm owes a fiduciary duty, whose confidential materials were seized and disclosed.  ¶¶ 2-3, 34, 39-44, 53.  Defendants concede that the attack targeted plaintiff's information, *see* Defendants' Memorandum at 10 ("targeting only plaintiff"), further confirming that the firm's claim of "privilege," denying plaintiff information about what happened to him, is without merit and an additional ground and evidence of defendants' wrongdoing.

[5] In addition, *see infra* at 18-20 (the "lawyer as witness" rule upon which the firm relied when it "fired" plaintiff is inapplicable).

**D. Plaintiff is damaged by Clark Hill's undisputed failure to protect his confidential information, and then plaintiff suffers additional harm caused by the firm's withdrawal from representing plaintiff.**

The proximate cause of the public disclosure and dissemination of plaintiff's confidential information was Clark Hill's failure to protect plaintiff's confidential information by failing to have in place, as it agreed to have, adequate cybersecurity protection measures, including not putting plaintiff's materials on the firm's computer server.  ¶¶ 39-40, 42-45, 55-59, 61.

The harms, injuries, and damages to plaintiff which Clark Hill and Mr. Ragland have caused include the widespread public dissemination of the contents of plaintiff's highly confidential asylum application, *see* 8 C.F.R. § 1208.6, and other materials, thereby making those sensitive materials accessible to those hostile to plaintiff; damage to his personal and professional reputation; substantial loss of business opportunities; his personal safety and security have been put at risk; and he has incurred costs and expenses.  ¶ 56.  With respect to reputational harm, Clark Hill caused plaintiff's sensitive personal information and confidential documents to be published on social media and this has tarnished his reputation and undermined his credibility and undermined the credibility of his work in advancing the causes of bringing he rule of law, democracy, and justice to China.  ¶ 59.

Clark Hill then compounded the harm and injury to plaintiff by withdrawing, without good cause, from representing plaintiff.  ¶¶ 49-52, 55-61.  Clark Hill's wrongful firing of plaintiff as a client harmed, damaged, and injured plaintiff by denying plaintiff effective assistance of counsel at a moment when he needed counsel because his asylum application and other materials were splayed across social media; by denying plaintiff the benefit of Mr. Ragland's immigration law expertise in connection with pursuing to a successful conclusion plaintiff's asylum application; and has caused plaintiff additional reputational harm by sending the message that plaintiff was

somehow untrustworthy or acted improperly in connection with the firm's representation of plaintiff (despite neither being true).  ¶¶ 56-61.

### E.  Plaintiff has alleged sufficient facts to sustain his claim for punitive damages.

Defendants' misconduct here goes far beyond negligence.  The complaint alleges that defendants "were reckless" in their handling of plaintiff's confidential information and that such recklessness included putting the information on the firm's computer server, by transmitting the information via email, or otherwise, and that these actions were "intentional, deliberate, and willfully disregarded plaintiff's rights."  ¶¶ 62-63, 89-92.  The complaint further alleges that defendants' actions put plaintiff and his family at grave risk of harm; that defendants willfully disregarded these risks; and that defendants' conduct was accompanied by fraud, will, recklessness, and oppressiveness.  ¶¶ 62, 64, 89-92.

Defendants then compounded the harm, "choosing self-interest over protecting their client," ¶ 65, by unilaterally, and without good cause or lawful justification, withdrawing as plaintiff's counsel, and the firm took this improper action when plaintiff was in great need of counsel immediately, because of the hacking, and prospectively to pursue his asylum application to a successful conclusion.  The firm's actions were intentional, deliberate, reckless, and taken in willful disregard of plaintiff's rights and defendants' obligations and duties to protect plaintiff's rights.  ¶¶ 62, 65, 89-92.

### STANDARD OF REVIEW

Defendants' Fed. R. Civ. P. 12(b)(6) motion seeks dismissal of all of plaintiff's claims, asserting that each and all of them fail to state claims upon which relief may be granted.  For plaintiff to defeat defendants' motion as to each claim, plaintiff need show only that the complaint

sets forth enough facts to state a facially plausible claim, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and, in conducting this review, the Court must view all of the complaint's allegations "in a light most favorable to the plaintiff and must accept as true all reasonable inferences drawn from well-pleaded factual allegations," *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 134 (D.D.C. 2013).

The Court's review is limited to the legal sufficiency of the claims stated in plaintiff's complaint, and plaintiff is not required to prove his claims in the complaint.  *See Wilson v. Government of the District of Columbia,* 269 F.R.D. 8, 14 (D.D.C. 2010) ("as a general principle of civil procedure, factual proof of a claim is not demanded at the pleading stage and is instead only sought once the litigation progresses to the discovery stage") (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)); *id.* ("plaintiff is required to put forth only factual allegations that support her legal conclusions").

Defendants are entitled to "fair notice" of plaintiff's claims and the grounds upon which they rest.  *Kingman Park Civic Assoc. v. Williams,* 348 F.3d 1033, 1040 (D.C. Cir. 2003) ("[T]he complaint need only set forth a short and plain statement of the claim, giving the party served fair notice of the claim and the grounds upon which it is based.") (quotation and citation omitted) (cited and followed in *Command Consulting Group, LLC v. Neuraliq, Inc.,* 623 F. Supp. 2d 49, 51 (D.D.C. 2009); *see also Ass's of Am. Med. Coll. v. The Princeton Review,* 332 F. Supp. 2d 11, 16 (D.D.C. 2004) ("The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claims."); *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012).

**ARGUMENT**

**BECAUSE PLAINTIFF'S COMPLAINT ALLEGES SUFFICIENT FACTS TO SUSTAIN EACH AND ALL OF THE CLAIMS IN THE COMPLAINT, DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.**

I. **Count I of plaintiff's complaint states a cause of action for defendants' breach of fiduciary duty.**

Count I of plaintiff's complaint, ¶¶ 66-74, states a claim against defendants (plaintiff's lawyers) for breach of their fiduciary duty as lawyers to plaintiff (their client). Under District of Columbia law, a claim for damages for breach of fiduciary duty is stated where, as here, plaintiff alleges (1) the existence of a fiduciary duty, (2) violation of that duty, and (3) resulting injury. *See Command Consulting Group,* 623 F. Supp. 2d at 54 (quotation and citations omitted).[6]

A. Plaintiff's complaint alleges facts showing an attorney-client relationship between plaintiff and defendants and that defendants owed plaintiff a fiduciary duty.

Plaintiff's complaint alleges that "[d]efendants formed an attorney-client relationship with plaintiff." Complaint ¶ 67. By virtue of that relationship, "defendants owed plaintiff all the fiduciary duties and obligations which a lawyer owes to a client." *Id.*; ¶¶ 28-38 (specific allegations regarding plaintiff's retention of the Clark Hill firm and the establishment of a fiduciary attorney-client relationship between the firm and plaintiff).

The parties' formalized their relationship when plaintiff, through his authorized representative, executed a letter retention agreement, which, among other obligations, obligated the firm to act on plaintiff's behalf to the best of the firm's ability and that the firm's lawyers are

---

[6] Defendants fail to explain the rationale for the sequence of arguments in their memorandum. For example, defendants' first argument addresses plaintiff's legal malpractice claim, despite its being Count III in the complaint, and defendants' second argument addresses plaintiff's fiduciary duty claim, which is Count I. *Compare* Complaint ¶¶ 66-88 *with* Defendants' Memorandum at 6-13. Seeing no reason to deviate from the sequence in the complaint, plaintiff addresses the claims in the order they are stated in the complaint.

subject to the Rules of Professional Conduct governing lawyers in the District of Columbia. *Id.* ¶¶ 34, 38. Once the firm was retained, "[p]laintiff delivered sensitive personal information and confidential documents to defendants so they, as counsel, could complete plaintiff's asylum application." *Id.* ¶ 38.

The complaint identifies specific fiduciary duties which defendants owed to plaintiff, including "the duty not to undertake a matter beyond the professional and technical competence, capability, and capacity of defendants; the duty to maintain reasonable and adequate, in this case meaning heightened, security measures to safeguard plaintiff's sensitive personal information and confidential records; the duty not to expose plaintiff's confidential information to the risk of disclosure by allowing the information to appear on the firm's computer server; the duty to exercise at all times the utmost good faith and undivided loyalty to plaintiff; the duty to provide competent legal representation; and the duty not to withdraw from representing plaintiff, effectively abandoning him, absent valid and appropriate cause." *Id.* ¶ 68.

In sum, there is no doubt that the complaint alleges a fiduciary relationship between plaintiff (client) and defendants (attorney), "a relationship founded upon trust and confidence." *Command Consulting Group,* 623 F. Supp. 2d at 54 (quotation and citations omitted); *see also Bolton v. Crowley, Hoge & Fein, P.C.,* 110 A.3d 575, 584 (D.C. 2015) ("The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to the most conscientious fidelity.") (quotation and citation omitted).[7]

---

[7] Defendants make no assertion that plaintiff was not a client of the firm and that, as a result, defendants had fiduciary attorney-client obligations to plaintiff. *See* Defendants' Memorandum at 6-14.

B. Plaintiff's complaint alleges facts showing that defendants breached their fiduciary duty to plaintiff.

The complaint also alleges, in comparable detail, that defendants breached their fiduciary duty to plaintiff.  This breach occurred in two distinct ways: first, defendants breached their fiduciary duty to protect plaintiff's confidential information; and second, defendants breached their fiduciary duty of loyalty to plaintiff.

1. Defendants breached their fiduciary duty to protect plaintiff's information from public dissemination.

In *Attias v. CareFirst, Inc.,* 365 F. Supp. 3d 1 (D.D.C. 2019), the court reviewed District of Columbia law to identify the factors which determine a party's duty to provide reasonable data security.  This determination involves "a variety of considerations," *Attias,* 365 F. Supp. 3d at 20, and "[t]hese considerations include the foreseeability of harm and the nature of the relationship between the parties." *Id.*  (quoting and citing *Bd. of Tr. of Univ. of Dist. Columbia v. DiSalvo,* 974 A. 2d 868, 871 (D.C. 2009)).

The District of Columbia Court of Appeals has "described a court's examination of whether a duty exists as a 'foreseeability of harm test' that is determined, in large part, by the nature of the relationship between the parties." *Hedgepath v. Whitman Walker Clinic,* 22 A.3d 789, 794 (D.D.C. 2011) (*en banc*) (quoting *Odemns v. District of Columbia,* 930 A.2d 137, 143 (D.D.C. 2007)); *see also id.* ("Recently, we have even suggested that the relationship between the parties is *the key* to determining whether the defendant had a legally enforceable duty to the plaintiff.") (emphasis in original).

This is not a case where the party responsible for the disclosure of confidential data is a fast food vendor, or a credit card company, or anything of the sort.  The parties involved here are a lawyer and a law firm, handling the confidential personal data and information of their client to

14

whom they owe the ultimate fiduciary responsibility. *See Bolton,* 110 A.3d at 584. The attorney-client relationship between defendants and plaintiff, a relationship "of the very highest character," *id.,* and its corollary obligations are virtually dispositive in establishing that the defendants here had a duty to plaintiff. *See Hedgepath,* 22 A.3d at 794.

The foreseeability of harm element is equally clear and powerful. The complaint sets forth specific allegations that defendants were warned *in advance* of the risks of cyberattacks; the firm undertook the representation with foreknowledge of the risks; the firm agreed to take special security precautions; and the firm was reckless in making plaintiff's information accessible to "hackers" by placing the information on the firm's server and transmitting plaintiff's information via a firm email account. *See, e.g.*, Complaint ¶¶ 31-33, 35, 39 (allegations regarding, among other things, plaintiff telling firm that "any law firm preparing his asylum application had to expect to be subjected to sophisticated cyberattacks"; firm undertook the representation of plaintiff "with a full awareness and understanding of the cyber security and other potential risks involved"; "*Mr. Ragland and the firm agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive confidential information. Such precautions would include not placing any of plaintiff's confidential information on the firm's server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a 'hacker'*"; however, "*Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third-parties.*") (emphasis added)).

The complaint then alleges that defendants' breached their duty to protect plaintiff's sensitive confidential information when, because of defendants' failures, plaintiff's information was spread across social media. *See* Complaint ¶¶ 2-3, 5, 9, 39-44, 66-69.

Defendants' Memorandum is silent on all of the relevant factors governing a party's fiduciary duty with respect to data security.  Defendants ignore the above cited controlling District of Columbia authorities, despite that they are the cases which, under District of Columbia law, set forth the factors which define a party's duty to protect another party's data.  In connection with defendants' challenge to plaintiff's legal malpractice claim, *not* plaintiff's fiduciary duty claim, defendants do, however, rely upon the case of *Sackin v. Transperfect Global, Inc.* 278 F. Supp. 3d 739 (S.D.N.Y. 2017).  *See* Defendants' Memorandum at 12.  While *Sackin* arises under New York law, it is worth mention.  It is helpful to plaintiff, not defendants.

*Sackin* held that plaintiffs' complaint sufficiently alleged that the defendant "violated its duty to take reasonable steps to protect its employees' PII [personally identifiable information]." *Id.* at 748.  These sufficient allegations were that the employer "was aware of the sensitivity of PII and the need to protect it" and that "despite this knowledge, defendant failed to take reasonable steps to prevent the wrongful dissemination of plaintiffs' PII."  *Id.*  That describes plaintiff's complaint in this case.  Plaintiff's complaint in this case, like that of the plaintiffs in *Sackin*, alleges that Clark Hill was fully aware *in advance* of the sensitivity of plaintiff's information, the likelihood of efforts to seize the information, and the necessity for the firm to take special precautions to protect plaintiff's information, *see* Complaint ¶¶ 31-33, 35; and specific precautions would include "not placing any of plaintiff's information on the firm's server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a 'hacker,'" *id.* ¶ 33; *id.* (the firm "committed and agreed to have in place at all times the requisite security measures to protect plaintiff's confidential information.").

Also like the complaint in *Sackin*, plaintiff's complaint alleges that "defendant failed to take reasonable steps to prevent the wrongful dissemination" of plaintiff's confidential

information, *id.* ¶ 39 ("*Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information [contrary to the firm's commitment, id.* ¶ 35], *and used his firm email account to transmit plaintiff's confidential information," thereby "'open[ing] the door wide' to the firm's server to potential 'hackers' and thoroughly compromis[ing] the confidentiality of plaintiff's information*") (emphasis added); *id.* ¶ 42 ("firm's security measures were inadequate, unreasonable, and fell far short of defendants' promises, assurances, obligations, and commitments to provide adequate security measures, given the circumstances of this case"); *id.* ¶ 3 ("*Contrary to Mr. Ragland's representations, the firm did not have adequate and appropriate electronic security measures in place to protect plaintiff's information and Mr. Ragland failed to take appropriate actions to protect plaintiff's confidential information.*") (emphasis added).

The above allegations are among those stated in plaintiff's complaint. Defendants ignore them, pretending that they do not exist. Defendants have far more than fair notice of plaintiff's claims and plaintiff's allegations raise issues of fact to be developed through discovery and then tested, at the appropriate time, which is not now, in a properly supported motion for summary judgment or at trial.

Plaintiff's breach of duty claim for defendants' failure to protect his information is not based, as defendants would wish it, on "the mere fact that a cyber incident occurred." *See* Defendants' Memorandum at 10. Rather, the claim is based, as plaintiff's complaint makes clear, on facts which show that defendants' failures "compromised the confidentiality of plaintiff's information." *See, e.g.*, Complaint at ¶ 39. Defendants' defense, such as it is, is to ignore the allegations of the complaint.

17

2. <u>Defendants breached their fiduciary duty of loyalty to plaintiff</u>.

The second category of fiduciary breach alleged in the complaint arises from defendants' termination of their representation of plaintiff immediately following the "hacking" of defendants' computer network and the seizure of plaintiff's confidential information. Defendants manifestly breached their core fiduciary duty of loyalty to a client when they declared to plaintiff "you're fired." *See Bolton,* 110 A.3d at 584 ("lawyers owe their clients a duty of loyalty").

The complaint alleges that defendants breached their fiduciary duty to plaintiff by improperly and without valid cause withdrawing from representing plaintiff, "choosing self-interest over protecting their client." Complaint ¶ 65; *id.* ¶¶ 2, 6-7, 49-51 (specific allegations regarding the firm's action a week following the "hacking" informing plaintiff "it must withdraw as [his] counsel," for the pretextual reason of Mr. Ragland's being a witness in plaintiff's as-of-yet not scheduled asylum proceeding); *id.* ¶ 52 ("*The firm simply wanted 'out' despite its clear contrary ethical obligations, including the duty of undivided loyalty to its client (plaintiff). To accomplish its improper 'fire the client' escape mission, the firm manufactured a plainly bogus 'reason' to seek to justify its action. Here, the firm's client had done nothing wrong and certainly had done nothing to warrant such brutal, unjustifiable, and unethical treatment.*") (emphasis added); *id.* ¶ 70 (defendants terminated representation "improperly and without valid cause"); *id.* ¶ 71 (defendants had "no valid or legally or ethically sufficient cause for terminating their representation"; *the firm's stated reason for its termination action "was a transparent sham proffered to justify the defendants improper unilateral decision*") (emphasis added).

When defendants terminated their representation of plaintiff, they rested their withdrawal on the assertion that "[u]nder our Rules of Professional Conduct, a lawyer may not serve as an advocate in a proceeding where the lawyer is likely to be a material witness," and defendants

18

asserted that "the cyberattack will require Mr. Ragland – and possibly other members of the firm – to be witnesses in [plaintiff's] asylum proceeding."  Complaint ¶ 49.  The Rule of Professional Conduct which, supposedly, dictated this withdrawal is D.C. R. Prof. Conduct 3.7(a).  *See* Defendants' Memorandum at 7-8 ("Withdrawal was necessary under Rule of Professional Conduct 3.7").

As a matter of law, defendants' reliance on Rule 3.7 is without merit, further confirming the allegations in the complaint regarding the firm's "sham" justification for abandoning plaintiff. Rule 3.7(a) prohibits a lawyer from acting "as advocate *at a trial* in which the lawyer is likely to be a necessary witness [with certain exceptions]."  D.C. R. Prof. Conduct 3.7(a) (emphasis added.) As Mr. Ragland, an immigration law expert, *see* Complaint ¶ 28, certainly knows well, there is no foreseeable prospect of "a trial" here; rather, an "asylum interview," which the asylum officer is directed to conduct  "in a nonadversarial manner," *see* 8 C.F.R. § 1208.9(b), is the next event and that interview may well be the end of the process.  The plain text and long-standing interpretation of Rule 3.7 make clear that Rule 3.7's prohibition does *not* apply to "interviews" and, instead, is limited strictly to in-court ("at a trial") representation.  *See* D.C. Ethics Opinion 228 (May 1992) ("Had the District of Columbia Court of Appeals intended the rule to apply beyond prohibition of *courtroom representation*, the rule would have been so written.") (footnote omitted) (emphasis added). [8]

Defendants, recognizing that a fair reading Rule 3.7 does not aid their cause, omit the text of the rule and argue that Rule 3.7 applies "when the attorney is 'likely to be a necessary witness'

---

[8] In any event, Mr. Ragland is an unlikely candidate to be a witness on the issue of the firm's having been "hacked."  His area of expertise is immigration law, Complaint ¶ 28, not information technology.  A far more likely witness would be the firm's IT vendor.

*in the proceeding*." Defendants' Memorandum at 7 (emphasis added). This is wrong. The Rule's prohibition is "at a trial," *not* "in a proceeding."

Further, were Rule 3.7 applicable to plaintiff's asylum interview, which it is not, the rule includes two exceptions, both of which apply here and neither of which defendants made any effort to utilize. First, the rule does not apply where, as here, "the testimony relates to an uncontested issue." *See* Rule 3.7(a)(1). Here, the fact of the "hacking" would be the "uncontested issue" as to which Mr. Ragland would offer "testimony" (at an interview) (assuming, but not conceding, his necessity and competence to testify as to the IT matter of the "hacking"). That fact is not in dispute. Second, the rule is inapplicable if the "[d]isqualification of the lawyer [Mr. Ragland] would work substantial hardship on the client."  *See* Rule 3.7(a)(3).  The strong basis for invoking this exception is that Mr. Ragland would be "testifying" (at the asylum interview) to the uncontested issue of the "hacking" and the "substantial hardship" would be that plaintiff would lose his chosen counsel (Mr. Ragland), whom plaintiff chose because of Mr. Ragland's special expertise "as a leading immigration lawyer." *See* Complaint ¶ 28.[9]

Further acknowledging that they cannot lean on Rule 3.7 to defend their abandonment of plaintiff, defendants trot out in this Court a new and not contemporaneously raised "reason" why, supposedly, abandoning their client was "necessary."  Defendants now invoke D.C. R. Prof Conduct 1.7(b)(4). *See* Defendants' Memorandum at 8-9. For present purposes only, plaintiffs will assume that it is permissible for defendants now, years later and in the midst of litigation, to

---

[9] Mr. Ragland's biography on the Clark Hill website states he "has practiced immigration law for more than 20 years; he "has devoted himself to guiding individuals and companies through the complex, often overwhelming, U.S. immigration system"; and describes him as "a tireless advocate for his clients."  *See* https://www.clarkhill.com/people/thomas-k-ragland (last visited January 8, 2020).

rely upon a newly manufactured justification for their wrongful abandonment of their client.  Rule 1.7(b)(4) is still no help to defendants.  It does not immunize defendants' from plaintiff's claim that "firing" plaintiff was wrong.  Rule 1.7(b)(4) applies, if at all, only when "[t]he lawyer's professional judgment on behalf of the client *will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property interests.*"  D.C. R. Prof Conduct 1.7(b)(4) (emphasis added.)  These are all inherently factual issues.  At an absolute minimum, therefore, there would have to be a factual record – and here there is none – to substantiate defendants' late-breaking position that their professional judgment would be or reasonably might be adversely affected as the rule requires.  These questions of fact plainly *cannot* be decided in defendants' favor on the present blank record.

Moreover, defendants' "shifting sands" approach, manufacturing a new reason in the midst of litigation, itself requires denial of defendants' motion to dismiss.  Defendants' post-*hoc* action creates a triable issue of fact.  *See Geleta v. Gray,* 645 F.3d 408, 413-14 (D.C. Cir. 2011) (reversing grant of summary judgment because a reasonable jury could find "proffered reasons are a pretext" where reasons "have changed over time") (citing, among other cases, *EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 852-53 (4th Cir. 2001) (reversing grant of employer's motion for summary judgment: "the fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext")); *EEOC,* 243 F.3d at 853 ("a factfinder could infer from the late appearance of Sears's current justification that it is a post-hoc rationale, not a legitimate explanation").  Because a change in reason creates a factual issue regarding pretext, thereby precluding summary judgment, *Geleta,* 645 F.3d at 413-14, present defendants' changed (new) proffered "reason" precludes dismissal of plaintiff's claim that defendants' "firing" of plaintiff was a breach of defendants' duty of loyalty.

C. <u>Plaintiff's complaint alleges facts showing plaintiff has been injured by defendants' breaches of their fiduciary duties to plaintiff.</u>

1. <u>The complaint alleges specific harms and injuries caused by the improper widespread public dissemination of plaintiff's confidential information.</u>

Plaintiff's complaint also amply pleads the third element of a breach of a fiduciary duty claim: harm and injury to plaintiff proximately caused by defendants' breach of their duty to protect his confidential information from unauthorized public disclosure. That injury begins with the undeniable fact that plaintiff's confidential information lost all of its protection and was splayed over social media sites. *See* Complaint ¶¶ 2, 3, 5, 9, 39-44, 55, 57, 69.

Plaintiff's information was specifically targeted and then misused by being disseminated. *Id.* ¶ 55 ("As a direct and proximate cause of defendants' multiple breaches of their duties and legal obligations to plaintiff, plaintiff's sensitive personal information and confidential documents were disclosed to third-parties, to the world at large, and to persons and institutions in China, including the Chinese government and [the Chinese Communist Party], to the great and severe injury, harm, and detriment of plaintiff."); *id.* ¶ 57 (the proximate result of defendants' breaches of their duties is that "the details and contents of plaintiff's asylum application and other materials have been disclosed widely on social media platforms and placed in the hands of third-parties hostile to plaintiff").

These allegations more than suffice to state a claim for injuries for data breach. *See In re Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 65 (D.C. Cir. June 21, 2019) (plaintiffs' injury and damage claims in data security breach case cannot be disregarded at the pleading stage where "*the complaint provides no basis for disregarding the claimed financial losses*") (emphasis added) (hereinafter "*In re OPM*"); *Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826, 828 (7th Cir. 2018) (victims of data breach have standing and have stated a claim because

under the Federal Rules "all [their] complaint needed to do was allege generally that plaintiffs have been injured"); *id*. ("the federal rules do not require plaintiffs to identify items of loss (except for special damages"); *Attias,* 365 F. Supp. 3d at 12 (plaintiffs who alleged "misuse of exposed personal information" alleged "actual damages"); *In Re Equifax, Inc., Customer Data Security Breach Litigation,* 362 F. Supp. 3d 1295, 1316 (N.D. Ga. 2019) ("Plaintiffs allege that their information was specifically targeted and has already been misused.   The plaintiffs have adequately alleged facts showing actual cognizable injury.") (distinguishing *Randolph v. ING Life Ins. & Annuity Co.,* 973 A.2d 702 (D.D.C. 2009), upon which defendants rely, see *infra* at 25-26). These ample authorities refute defendants' unfounded contention that there is some deficiency in plaintiff's pleading with respect to harm, injury, and damages.  *See* Defendants' Memorandum at 15-21.

Defendants concede that plaintiff's information was targeted, *see* Defendants' Memorandum at 10, much as was the case in *In Re Equifax, Inc.*  The plaintiffs in *In Re Equifax, Inc.* also alleged cognizable injury as "they have alleged that they have already incurred significant costs in response to the Data Breach."  362 F. Supp. 3d at 1317.  So, too, here.  *See* Complaint ¶ 56 (plaintiff "has lost substantial business opportunities"); *id.* ("plaintiff has incurred costs and expenses").  Other relevant categories of cognizable harm recognized by the court in *In Re Equifax, Inc.* were past "identity theft" and "a substantial and imminent risk of impending identity fraud due to the vast amount of information that was obtained in the Data Breach."  362 F. Supp. 3d at 1317.  Plaintiff's complaint alleges analogous, if not far more serious, kinds of past and imminent risk of harm and injury.  *See* Complaint ¶ 56 ("plaintiff's personal safety and security have been put at risk"); *id.* ¶ 57 ("There are powerful people and interests in China and elsewhere hostile to plaintiff because of his political views who now have – solely because of defendants' failures and

breaches of duty – detailed information about plaintiff which they would not otherwise have. There is good cause to believe that these persons have used and will continue to use plaintiff's confidential information for purposes harmful to plaintiff."); *id.* ¶ 58 (harm "extends to limiting plaintiff's liberty to travel and jeopardizes his personal safety"); *id.* ("harms are continuous and ongoing"). Plaintiff also alleges cognizable reputational harm. *Id.* ¶ 59 (the publication of plaintiff's sensitive information "has caused great harm to plaintiff by tarnishing his reputation and undermining his credibility and the credibility of his work"). Future harm is also compensable. *See In re OPM*, 928 F.3d at 58-59.

2. <u>The complaint alleges specific harms and injuries caused by defendants' improper abandonment of their client</u>.

Specifically alleged harms arising from defendants' abandonment of plaintiff include that "plaintiff has incurred costs and expenses; and plaintiff has been denied the benefit of defendants' claimed immigration law expertise in connection with pursuing plaintiff's asylum application." Complaint ¶ 56; *see also supra note* 9. In addition, "[d]efendants improper action in abandoning their client (plaintiff) denied plaintiff the benefit of counsel at a time when he needed counsel (because his confidential information had just been splayed all over social media); sent the message to the public that plaintiff was somehow untrustworthy or acted improperly in connection with the representation; …; and has caused and/or will cause undue delay and complications in action on plaintiff's asylum application." *Id.* ¶ 60.

Defendants' response to plaintiff's detailed allegations of these two distinct categories of defendants' breach of their fiduciary duties to plaintiff, with resulting harms, is that "plaintiff does not sufficiently allege that defendants breached a duty." Defendants' Memorandum at 12. In supposed support of this assertion (made in the face of the directly contrary allegations of

plaintiff's complaint), defendants cite *Randolph v. ING Life Ins. & Annuity Co.,* 973 A.2d 702, 709 (D.C. 2009).   Defendants' assertion is frivolous, and their heavy reliance on *Randolph* highlights the weakness of their arguments.

The plaintiffs in *Randolph* were current or former District of Columbia employees whose personal information relating to their participation in a deferred compensation plan was stored on a laptop computer that was stolen from the plan administrator's home.   973 A.2d at 704.   In *Randolph*, however, altogether unlike the present case, "*no plaintiff alleges that his or her identity has in fact been stolen or used, and no police officer plaintiff alleges that his or her residence has been revealed or threatened in any way*."   *Id.* at 708 (quotation omitted) (emphasis added).   The *Randolph* plaintiffs alleged only that "these harmful events may occur."   *Id.* (quotation and footnote omitted).   In the absence of any allegation that a plaintiffs' identity was, in fact, stolen or used, or that a plaintiff's place of residence was revealed, the *Randolph* court concluded that plaintiffs' negligence and gross negligence claims failed as a matter of law, and "[f]or much the same reason, [plaintiffs'] common-law breach of fiduciary duty count also fails to state a claim." *Id.* at 708-09; *id*. at 709.[10]

Here, in sharp contrast to *Randolph*, plaintiff's complaint alleges, in multiple places, that his confidential information was stolen from Clark Hill's computer system and that his information was not just "revealed," but disseminated widely and this occurred because of defendants' breach of their fiduciary duty to their client (plaintiff).   *See, e.g.*, Complaint ¶¶ 2, 3, 5, 9, 39-44, 55, 69.

---

[10] *Randolph* is in tension with *Attias v. CareFirst, Inc.,* 865 F.3d 620, 626 (D.C. Cir. 2017) (plaintiffs had Article III standing where they alleged that a data breach exposed them to a heightened risk of identity theft).   This tension need not be resolved here because the present plaintiff suffered actual present injury, as well as being at risk of future injury.

The obvious difference between the plaintiffs' allegations in *Randolph* (no allegation of personal data having been stolen) and the present plaintiff's allegations (multiple allegations that his data and confidential information were stolen and, indeed, defendants acknowledge that this occurred, *see* Complaint ¶¶ 41, 49, 53) is why the court in *In Re Equifax, Inc.* distinguished *Randolph*.  Indisputable cognizable injury is stated here and in cases such as *In Re Equifax, Inc.* and for certain plaintiffs in *Attias* where plaintiffs allege "misuse of exposed personal information."

Defendants' erroneous contention that "plaintiff does not sufficiently allege that defendants breached a duty" is reflective of defendants' fundamental misunderstanding of plaintiff's pleading burden at this point, a misunderstanding which permeates Defendants' Memorandum.  Defendants seek to impose a burden of proof on plaintiffs when, as a matter of law, their burden is met by alleging a breach (or similarly damages, for example).  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (distinguishing between pleading stage and summary judgment where "on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim") (quotation and citation omitted); *Buruca v. District of Columbia,* 902 F. Supp. 2d 75, 85 (D.D.C. 2012) (at the pleading stage "the veracity of the plaintiff's allegations is presumed").

In summary, plaintiff has stated a claim upon which relief may be granted for defendants' breach of fiduciary duty.  Accordingly, defendants' motion to dismiss that claim (Complaint ¶¶ 66-74) should be denied.[11]

---

[11] Defendants' erroneous arguments that plaintiff's breach of fiduciary duty claim should be dismissed because, supposedly, it fails because, supposedly, plaintiff's malpractice claim fails and/or because, again supposedly, the fiduciary duty claim is duplicative are addressed *infra* at 34-37.

II.     **Count II of plaintiff's complaint states a cause of action for defendants' breach of the parties' contract for legal representation.**

Count II of plaintiff's complaint (¶¶ 75-79) sets forth a claim for breach of the parties' contract of representation.  Defendants admit that the parties had a contract.  *See* Defendants' Memorandum at 14; *id.*, Ex. A (attaching contract (engagement letter) and the accompanying terms of engagement and which forms a part of the parties' agreement).  Nevertheless, defendants, again without regard to the allegations of the complaint, assert "[p]laintiff does not allege *how* defendants breached the engagement letter [contract]."  *Id.* (emphasis added).  This assertion does not withstand any scrutiny.

As is customary, Count II begins by incorporating by reference all of the allegations in the preceding 74 paragraphs, *see* Complaint ¶ 75, meaning, of course, that all of the allegations in ¶¶ 1-74, including all of those reviewed and stated above in connection with plaintiff's breach of fiduciary duty claim, are stated (incorporated by reference) in plaintiff's breach of contract claim. In the interest of avoiding unnecessary repetition, plaintiff here follows the same approach and here adopts and incorporates, rather than repeating, all the preceding citations and quotations from plaintiff's complaint.

The applicable specific provisions of the parties' contract which plaintiff alleges defendants breached are:

(1) the firm violated the contract provisions that it would represent plaintiff "in U.S. immigration matters," Defendants' Memorandum, Ex. A at 1, and "at all times … act on [plaintiff's] behalf to the best of [the firm's] ability," *id.* at 5 (Terms of Engagement at 1);

(2) the firm violated the contract provision that plaintiff "as a client of the firm" has "the right to expect competent representation [by the firm's] attorney," *id*. at 2;

(3) the firm violated the contract provision that plaintiff "as a client of the firm" has the right to "determine the purposes to be served by the legal representation, so long as those purposes are legal and do not violate the attorney's obligation to the profession or to the judiciary," *id.*; and

(4) the firm violated the contract's termination provisions, *id*. at 8 (Terms of Engagement at 4).

As to defendants' contention that "plaintiff does not allege how defendants breached the engagement letter [contract]," the firm violated its contractual obligation to represent plaintiff "in U.S. immigration matters" when the firm, without justification, *see supra*, "fired" plaintiff as a client, and thereby ceased, without cause, to represent him.  The same is true with respect to the firm's contractual obligation to "at all times … act on [plaintiff's] behalf to the best of [the firm's] ability."  The firm certainly did not "act on [plaintiff's] behalf" when it "fired" plaintiff.  Similarly, the firm did not "act on [plaintiff's] behalf" when, because of the firm's multiple failures, as detailed in the complaint, plaintiff's confidential information was splayed across the web.

The firm violated its contractual obligation to provide "competent representation" by providing grossly incompetent representation by putting plaintiff's confidential information on the firm's server and emailing plaintiff's confidential information using the firm's email account, contrary to the firm's commitments, and by not having in place, as again it committed to have, adequate, here meaning special (given the circumstances), security measures.  Further, the firm can hardly claim that the complaint does not allege a failure to provide "competent representation" when the firm, without cause, ceased to provide any representation at all.

The complaint certainly alleges that the firm denied plaintiff his right to "determine the purposes to be served by the legal representation, so long as those purposes are legal and do not violate the attorney's obligation to the profession or to the judiciary."  The firm, not plaintiff, determined that "the purposes to be served by the legal representation" ended and the firm's reason(s) had nothing whatsoever to do with any illegal purpose, or any violation of "the attorney's obligation to the profession or to the judiciary."

And finally, the firm violated the contract's termination provisions by terminating its representation for reasons far beyond those identified in the Terms of Engagement governing "termination," and because the reason the firm terminated its representation is not among the "several types of conduct or circumstances that require or allow [the firm] to withdraw from representing a client."  As the complaint alleges, the firm's contemporaneously proffered "reason for termination" was a sham and pretext and, as discussed above, the sham continues as defendants roll out a new pretextual "reason" in this Court.

In summary, plaintiff has stated a claim upon which relief may be granted for defendants' breach of the parties' contract of representation.  Accordingly, defendants motion to dismiss that claim (Complaint ¶¶ 75-79) should be denied.

### III.   Count III of plaintiff's complaint states a negligence (legal malpractice) cause of action against defendants.

Count III of plaintiff's complaint (¶¶ 80-88) sets forth plaintiff's claim against defendants for legal malpractice.  "The elements of an action for professional negligence are the same as those of an ordinary negligence action."  *Chase v. Gilbert,* 499 A.2d 1203, 1211 (D.C. 1985) (quotation and citation omitted).  "To show that an attorney has been negligent, a party must *prove*: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3)

that the attorney's negligence resulted in and was the proximate cause of a loss to the client." *Id.* (citing cases) (emphasis added).

*"The question of whether a party was negligent is generally a question of fact."* *Id.* (citing cases) (emphasis added). This rather obvious point alone goes a long way to defeat defendants' plea to dismiss plaintiff's negligence (legal malpractice) claim. Plaintiff's complaint alleges all three elements of a negligence (malpractice) claim against defendants (a law firm and one of its attorneys) and it is not plaintiff's burden at this stage to *prove* those elements; the elements have been alleged and, as a matter of settled law, that suffices. *See Chase*, 499 A.2d at 1211.

Paragraph 80 of Count III adopts and incorporates by reference the allegations set forth in the preceding 79 paragraphs. *See* Complaint ¶ 80. Plaintiff here follows the same approach and adopts and incorporates, rather than repeating, all the preceding citations and quotations from plaintiff's complaint. From there, the complaint alleges that "an attorney-client relationship existed between plaintiff and defendants, [and that] defendants owed plaintiff contractual, common law, and professional duties to use the required degree of professional care and skill to represent plaintiff competently and professionally and consistent with the applicable standard of care." *Id.* ¶ 81.

The complaint then further alleges that "[a]s detailed in this complaint [incorporating allegations in complaint's preceding ¶¶ 1-79], the firm did not represent plaintiff with the required degree of professional care and skill." *Id.* ¶ 81. The complaint also alleges that "plaintiff has been harmed and damaged as a result of defendants' breach of their duties and obligations of care and competence to plaintiff." *Id.* ¶ 88; ¶¶ 55-61 (specific allegations of categories of damages). On its face, therefore, plaintiff's complaint alleges all three of the elements stated in *Chase* to state a

negligence (legal malpractice) claim against defendants Clark Hill and Mr. Ragland.  That suffices to deny defendants' motion to dismiss Count III.

Defendants, however, persist and seek dismissal of Count III asserting (1) "plaintiff cannot allege defendants breached any of their duties to the plaintiff," and (2) "plaintiff cannot allege that the defendants' actions caused plaintiff any actual harm as required to sustain a legal malpractice action."  Defendants' Memorandum at 6.  Both assertions are false.

To begin with, plaintiff's complaint explicitly *does* allege that defendants breached their duties to the plaintiff, and the compliant also explicitly *does* allege that defendants' actions caused plaintiff actual harm.  Defendants' notion that these are allegations which plaintiffs "cannot" make is belied by the complaint itself.  Rather than plaintiff's somehow being incapacitated from making the requisite allegations (defendants' "cannot allege" formulation), defendants argument must be that plaintiff's allegations, all of which for present purposes which must be accepted as true, are, for some reason, insufficient to give defendants' fair notice of plaintiff's claim (1) that defendants breached their duties to plaintiff, and (2) that defendants' breaches caused harm to plaintiff.  This line of argument is equally unsustainable.

Defendants' argument that it did not breach a duty, albeit the complaint alleges facts showing just the opposite, has two prongs.  Prong one is that defendants' "firing" of plaintiff as a client did not breach a duty because, supposedly, the "firing" was, defendants claim, "not only appropriate, but required."  *See* Defendants' Memorandum at 8; *id*. at 9 ("the Rules of Professional Conduct mandated that defendants withdraw from representing plaintiff").  Prong two is that "the mere fact a cyber incident occurred is not sufficient to allege that defendant the duty to safeguard confidential information."  *Id*. at 10-12.  Both prongs are addressed and thoroughly refuted *supra* in Argument § I (plaintiff's complaint states a cause of action for breach of fiduciary duty).

31

<u>Prong One</u>.   The "firing," or "withdrawal" as defendants prefer to call it, was not appropriate, and certainly not required or mandated by the Rules of Professional Conduct. Defendants abandoned any pretense of being competent, zealous, diligent advocates, *but see* D.C. R. Prof. Conduct 1.1(a), 1.3(a), and, instead, "cut and ran," with no care or concern for their client or defendants' obligations to their client.   The Rules of Professional Conduct upon which defendants rely now, Rules 3.7 and 1.7, do not give defendants some unexaminable absolute right to dump their client, nor do those rules immunize defendants' conduct from all scrutiny.   In fact, neither Rule supports defendants' action.   As also noted above, defendants "shifting sands" approach, launching a new "reason" in this litigation for "firing" plaintiff, supports plaintiff's contention that defendants' now several "reasons" are invalid and pretextual and creates a triable issue of fact precluding dismissal. *See Geleta,* 645 F.3d at 413.

<u>Prong Two</u>.   As to the seizure of plaintiff's confidential information from defendants' network, plaintiff's complaint alleges much, much more than "the mere fact of a cyber incident," and plaintiff does not "simply assume[] that because there was a cyber incident, defendants must have put up 'porous' and 'unreasonable' security measures." *See* Defendants' Memorandum at 10; *id*. at 12 ("The mere fact of the cyber incident is insufficient to support an allegation that the matter was beyond defendants' competence.").   To the contrary, plaintiff's complaint alleges, with specificity, that, for example, the firm undertook the representation with foreknowledge of the risks; the firm agreed to take special security precautions; and the firm was reckless in making plaintiff's information accessible to "hackers" by placing the information on the firm's server and transmitting plaintiff's information via a firm email account. *See, e.g.*, Complaint ¶¶ 31-33, 35, 39 (allegations regarding, among other things, plaintiff telling firm that "any law firm preparing his asylum application had to expect to be subjected to sophisticated cyberattacks"; firm undertook

the representation of plaintiff "with a full awareness and understanding of the cyber security and other potential risks involved"; "*Mr. Ragland and the firm agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive confidential information. Such precautions would include not placing any of plaintiff's confidential information on the firm's server as doing so would, as Mr. Ragland and the firm understood, make the information an easy target for a 'hacker'*"; *however, "Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third-parties*.") (emphasis added).

Plaintiffs have no burden *at this point* to prove their allegations and, similarly, defendants cannot avoid the force of the complaint's allegations by ignoring them, denying them, or requiring more when what is alleged states a claim. That, however, is the ongoing flaw in defendants' arguments. Defendants persist in ignoring the distinction between what plaintiffs have alleged and what the proof will ultimately be. This distinction is illustrated by the difference between the allegations in the complaint about defendants' failures (*e.g.*, putting plaintiff's information on the firm's server and transmitting plaintiff's information on the firm email account) and the contents of the investigative report which defendants acknowledge having regarding the cyberattack. *See* Complaint ¶¶ 46-48, 53.[12] The point for present purposes is that the report, whatever it says, whether it is fair and accurate (or not), is evidence (which, again, plaintiff does not have at this point). The fact that plaintiff does not have this evidence, however, does not undercut plaintiff's allegations. The purpose of a complaint is to set forth allegations stating a claim; the purpose of discovery is to obtain the evidence to substantiate (or refute) the claim. Defendants conflate

---

[12] To date, plaintiffs have been denied access to this report based on defendants' assertion of a meritless unidentified "privilege."

pleading with proof while the Federal Rules, which control here, draws a sharp distinction between the two.

With respect to both prongs of defendants' denial of breach of duty, defendants do not engage the actual allegations of plaintiff's complaint.  Instead, defendants pick a few words out of various paragraphs, scatter them about in their memorandum and conclude "we did no wrong." That does not work.  Defendants' unsubstantiated denials do not negate the allegations of the complaint.  There will come a time, at summary judgment or trial, when there will be an evidentiary record upon which factual determinations can properly be made.  A Rule 12(b)(6) motion, however, is not the proper vehicle to adjudicate whether plaintiff can *prove* his malpractice claim. The limited question at this juncture is whether plaintiff has stated a negligence (malpractice) claim against defendants and he has.[13]

## IV.    Defendants' miscellaneous alternative arguments for dismissal are meritless.

Defendants also argue that certain of plaintiff's claims should be dismissed because, supposedly, they are the same as other claims, which, by defendants' lights, should be dismissed. Defendants also argue that certain claims should be dismissed because, supposedly, they are duplicative (albeit of claims which defendants also say should be dismissed).  Defendants' logic is wrong and the cases they cite refute all of their arguments.

*United States Telesis, Inc. v. Ende,* 64 F. Supp. 3d 65 (D.C. 2014), for example, the case which defendants rely upon for the proposition that plaintiff's breach of fiduciary duty claim should be dismissed because, supposedly, plaintiff's malpractice fails, offers no support for dismissal of plaintiff's fiduciary duty claim.  In *United States Telesis, Inc.*, the legal malpractice

---

[13] Plaintiff has more than adequately alleged harm and injury, giving rise to a claim for damages. *See* Complaint ¶¶ 55-61, 88.

claim arose from counsel's alleged negligence in a prior lawsuit. The malpractice claim failed because plaintiff failed to plead that the plaintiff "would have achieved a different result in the underlying [preceding] case," 64 F. Supp. 3d at 67, thus defeating the subsequent malpractice claim, which, in turn, defeated plaintiff's fiduciary duty claim "to the extent that [the two] rely on the same standard of care." *Id.* at 68.

Here, by contrast, there is no defect in how plaintiff has pled his malpractice claim as he has alleged with specificity the elements required under *Chase* and, as a result, there is no basis for arguing for dismissal of the fiduciary duty claim based upon a non-existent and certainly not adjudicated "defect" in plaintiff's malpractice claim. Further, the malpractice involved here is altogether unlike that involved in *United States Telesis, Inc.,* which required alleging that a different result would have been obtained in a prior litigation had the plaintiff's lawyer not been negligent. *Id.* at 67. The present plaintiff's malpractice claim involves no such "case within a case" issues, and thus plaintiff has no such pleading obligation.

*United States Telesis, Inc.* does not apply for the additional reason that, by its own terms, its reasoning applies only "to the extent that [the malpractice claim and the fiduciary duty claim] rely on the same standard of care." *Id.* at 68. Under District of Columbia law, however, the standard of care for the two claims is not the same. *See Bolton,* 110 A.3d at 583 ("The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on a breach of fiduciary duty (sometimes called breach of the standard of conduct).") (quotation and citation omitted).

*Chase* sets forth the elements of a malpractice claim, (1) an attorney-client relationship; (2) the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted caused a loss to the client," 499 A.2d at 1211, and these elements are quite different from those of a claim

for breach of fiduciary duty to provide data security, which focuses on the parties' relationship, *see* Complaint ¶ 68 (lawyer's fiduciary duty includes "the duty to exercise at all times the utmost good faith and undivided loyalty to plaintiff"), and foreseeability. *See Attias,* 365 F. Supp. 3d at 20; *Hedgepath,* 22 A.3d at 794; *see also* Mallen & Smith, *Legal Malpractice,* § 15.2, at 645 (2008 ed.) (fiduciary obligations are confidentiality and loyalty, whereas a "lawyer may have acted negligently, but with undivided loyalty and preserved the client's confidences").

Defendants fare no better with their arguments that plaintiff's fiduciary duty and breach of contract claims should be dismissed because, supposedly, they are "duplicative." *See* Defendants' Memorandum at 13.  Defendants are simply wrong that the claims are duplicative either as a matter of fact or as a matter of law.  The facts which give rise to a breach of contract claim, for example, are not the same as those which give rise to a negligence or breach of fiduciary duty claim.  A contract claim is rooted in the parties having a contract (as the parties here do) while a negligence or breach of fiduciary duty claim is rooted in the facts surrounding the parties' relationship to each other.  Further, as noted above, the standard of care of negligence (malpractice) and breach of fiduciary duty are different.  A cause of action for breach of contract (Count II) is simply not the same as a claim for either breach of fiduciary duty (Count I) or malpractice (Count III).

Even assuming, without conceding, that the claims here are duplicative, in both fact and law (which they are not), defendants have "jumped the gun" in seeking to invoke the principle that a duplicative claim should be dismissed.  That principle applies, if at all, only *after* there is an adjudication that the predicate claim fails.  The case upon which defendants rely, *North Am. Catholic Educ. Programming Found. v. Womble, Carlyle, Sandridge & Rice, PLLC,* 887 F. Supp. 2d 78 (D.C. 2012), proves this point.  In that case, the court had, earlier in the litigation, *granted defendants' motion for partial summary judgment and dismissed plaintiff's legal malpractice*

*claim.  See* 887 F. Supp. 2d at 82.  Because plaintiff's other causes of action were "based on the same sets of facts and seek identical relief" as the previously dismissed malpractice claim, they were deemed duplicative and similarly dismissed.  *Id.* 83-85.  There is no similarity between that scenario and the present case where there has been no adjudication of the merits of any of plaintiff's claims, let alone dismissal of any supposedly duplicative claim.[14]

**V.   Plaintiff's complaint more than sufficiently pleads that defendants caused plaintiff to suffer actual damages for which plaintiff is entitled to seek relief in this case.**

Defendants Memorandum has a catch all damages section (pp. 15-21) where defendants argue that all of plaintiff's claims should be dismissed because, supposedly, "plaintiff does not allege (and cannot allege) that defendants' actions caused actual damages." *Id.* at 15.  As discussed above in connection with plaintiff's particular claims, this assertion is not credible given the allegations of the complaint.  Here, again, defendants confuse, misunderstand, or misstate the difference between allegations and proof.

The depth of defendants' confusion is reflected in the first sentence in defendants' catch all section.  Defendants there "fault" plaintiff for his "failure" to "explain (in any way, shape or form) how he arrived at" his claimed damage figure of $50 million.  *Id.* at 15.  In the same vein, defendants go on to squawk that plaintiff's claim for damages for lost business opportunities is somehow "defective" because "plaintiff does not even identify his business." *Id.* at 16.  Not surprisingly, defendants cite no authority for their claimed propositions that plaintiff had any burden whatsoever *in the complaint* to "explain (in any way, shape or form)" why his damages

---

[14] The *North Am. Catholic Educ. Programming Found.* case is instructive, however, on the critical procedural point of *when* the court adjudicated the legal malpractice claim, *i.e.*, on a motion for summary judgment, and thus with a factual record, not, as the present defendants seek, on a motion to dismiss.

37

demand (calculation) is what it is or that plaintiff had a burden *in the complaint* to "identify his business." The Federal Rules impose no such obligations. These, too, are subjects for proof at summary judgment or trial, not, as defendants would have it, initial pleading requirements.

Plaintiff's complaint certainly alleges, for example, that his confidential information was splayed across social media; that this occurred because of defendants' actions, inactions, failures, and breaches; and plaintiff has been harmed, injured, and damaged by having his confidential information splayed across social media and defendants caused this harm. *See* Complaint ¶¶ 31-48, 55-59, 66-88. As discussed above, there is ample authority that these allegations suffice to overcome a preliminary motion to dismiss. Defendants cannot avoid these authorities by saying, as they do, plaintiff's damages "are either speculative or predated" the cyberattack and seizure of plaintiff's confidential information. That all remains to be seen and these outside-the-complaint assertions do not alter, let alone negate, the allegations of the complaint. Defendants' reliance on the *Randolph* case in their catch all section further confirms how far off base defendants' arguments are. *See* 973 A.2d at 708 (unlike here, no plaintiff in *Randolph* alleged that his or her identity had been stolen or used).

Similarly, the complaint alleges that defendants' wrongfully, improperly, and unlawfully "fired" plaintiff as a client, improperly, and without cause or justification, terminating the attorney-client relationship, and that plaintiff suffered harm, injury, and damages as a result of defendants' improper conduct. *See* Complaint ¶¶ 49-52, 55-56, 60, 66-88. Without a shred of evidence because, of course, this matter is now before the Court on a preliminary motion to dismiss, defendants just brush away plaintiff's alleged harms because Clark Hill's abandonment of plaintiff, they tell us, "did not cause any delay," and "plaintiff does not allege that he has been unable to obtain qualified successor counsel," and that his claim of reputational harm is "purely speculative."

*See* Defendants' Memorandum at 20.  Again, defendants will have the opportunity in the future to challenge plaintiff's proof on these and other areas of damages, but they cannot properly do so now in the guise of challenging plaintiff's complaint.

Plaintiff's complaint more than adequately alleges damages proximately caused by defendants.

**VI.    Plaintiff's complaint alleges sufficient facts to state a claim for punitive damages.**

Finally, defendants seek dismissal of plaintiff's claim for punitive damages, and, yet again, they conflate pleading with proof.  Specific sufficient allegations with respect to punitive damages are set forth in the complaint.  Complaint ¶¶ 62-65, 89-93.

The complaint alleges, for example, that "[p]unitive damages are warranted here because defendants' actions, inactions, and breaches of duties and obligations were reckless, wanton, intentional, and taken in willful disregard of plaintiff's rights and of defendants' obligations and duties to protect plaintiff's rights."  *Id.* ¶ 62.  The complaint further alleges that "[d]efendants were reckless in their handling of plaintiff's confidential information. . . .  [Defendants'] actions were intentional, deliberate, and willfully disregarded plaintiff's rights and defendants' obligations and duties to protect plaintiff's rights."  *Id.* ¶ 63.  "Defendants compounded their recklessness by abandoning plaintiff as their client, choosing self-interest over protecting their client.  Defendants' unilateral as plaintiff's counsel was intentional, deliberate, reckless, and unwarranted conduct, and conduct in willful disregard of plaintiff's rights and of defendants' obligations to protect plaintiff's rights."  ¶ 65.

In response, defendants assert (notwithstanding the allegations of the complaint) that "plaintiff has not alleged any facts indicating that defendants acted with malice or *willfully disregarded* the plaintiff's rights."  Defendants' Memorandum at 22 (emphasis added).  Not so.

The complaint, however, alleges that "Mr. Ragland and the firm agreed to take special precautions to prevent improper disclosure of plaintiff's sensitive confidential information.  Such precautions would include not placing any of plaintiff's information on the firm's computer server…. Had the firm not made these commitments and agreements plaintiff would not have retained the firm."  Complaint ¶ 33.  The complaint goes on to allege that, in violation of the firm's commitment, "Mr. Ragland used the firm's server to store and transmit plaintiff's sensitive information, and used his firm email account to transmit plaintiff's confidential information to third parties."  *Id.* ¶ 39.  The complaint further alleges that "defendants were reckless in their handling of plaintiff's confidential information.  Defendants' recklessness included failing to protect that information, putting it on the firm's computer server, either directly or indirectly by transmitting the information to third parties by the firm's email account or otherwise.  These actions were intentional, deliberate, and willfully disregarded plaintiff's rights and defendants' obligations and duties to protect plaintiff's rights."  *Id.* ¶ 63; *see also id.* ¶¶ 90-92.

Plaintiff's allegations with respect to defendants' abandonment of plaintiff are comparable.  That is, defendants acted improperly, without any just cause, in violation of their clear duties to the contrary, *id.* ¶¶ 49-52, and their improper actions were "intentional, deliberate, reckless, and unwarranted conduct, and conduct in willful disregard of plaintiff's rights and of defendants' obligations and duties to protect plaintiff's rights," *id.* ¶ 65; *see also id.* ¶¶ 90-92.

Plaintiff's complaint alleges sufficient facts to state a claim for punitive damages.

**CONCLUSION**

For the reasons stated above, defendants motion to dismiss plaintiff's complaint should be denied in its entirety.  Defendants should then answer the complaint and this case should proceed to discovery.

Respectfully Submitted,

/s/*Ari S. Casper*
Ari S. Casper (#471013)
Ralph S. Tyler (#357087)
The Casper Firm, LLC
400 East Pratt St., Suite 903
Baltimore, MD 21202
Tel: 410-989-5097
acasper@casperfirm.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Ari S. Casper, an attorney, hereby certifies that I served the foregoing Memorandum in

Opposition to Defendants' Motion to Dismiss  on the following by electronic service on this, the

10th day of January, 2020:

John R. Storino
JENNER & BLOCK, LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: (312) 222-9350
JStorino@jenner.com

Kali N. Bracey (#458965)
JENNER & BLOCK, LLP
1099 New York Avenue NW
Washington, DC 2001-4412
Tel: (202) 639-6000
KBracey@jenner.com

*/s/ Ari S. Casper*

Ari S. Casper