**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GUO WENGUI a/k/a MILES KWOK a/k/a HO WAN KWOK, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-3195 |
| v. | ) ) | Hon. James Boasberg |
| CLARK HILL PLC; THOMAS K. RAGLAND, | ) ) ) | |
| Defendants. | ) ) | |

**JOINT STATUS REPORT**

In accordance with this Court's Minute Order entered on February 17, 2021, Plaintiff Guo Wengui ("Plaintiff") and Defendants Clark Hill PLC and Thomas Ragland ("Defendants"), by and through their undersigned counsel, respectfully submit this Joint Status Report summarizing the issues to be addressed at the February 22, 2021 hearing.

> **1.    Plaintiff seeks permission to move to quash subpoenas issued by Defendants to law firms and other third parties to which Plaintiff has provided confidential information unrelated to his application for asylum.**

Plaintiff's Position: On January 13, 2021, the Court ordered Plaintiff to "provide any special information he provided to other fiduciaries (including banks and law firms) regarding the safeguarding of his materials."  Plaintiff has complied with the Court's order, describing instructions that he gave to six entities concerning the safeguarding of confidential information and materials.  Four of these entities are law firms that represented Plaintiff in matters unrelated to his asylum application; one is a security firm that provides personal protection services; one is the governing entity for the building where Plaintiff resides.  Defendants have issued subpoenas to all six entities, seeking both the production of documents and deposition testimony.

1

Plaintiff seeks to quash the subpoenas, because, under Rule 26, the discovery sought is not proportional to the needs of this case, and the substantial burdens associated with the discovery, including subpoenas to four law firms that have represented Plaintiff in matters unrelated to this case, substantially outweigh any marginal benefit.  Plaintiff retained Clark Hill and Mr. Ragland to represent him in connection with confidential asylum proceedings, in which he would be providing Clark Hill and Mr. Ragland with highly sensitive information concerning, among other things, decades of persecution that he and members of his family experienced in China, as well as highly sensitive details of certain assistance that he provided to the U.S. government.  The instructions that Plaintiff gave to other fiduciaries concerning the handling of other types of information are not probative of any matter at issue in this case.  Further, while Plaintiff understands that Defendants deny that Plaintiff ever asked them to give heightened protection to his confidential information, Defendants have produced an email communication in which Mr. Ragland expressly acknowledged that Plaintiff had asked Defendants to do so.  As such, even if special instructions given by Plaintiff to another law firm representing him in connection with a business matter could somehow be relevant to whether he gave special instructions to the law firm representing him in connection with his highly sensitive asylum application, there is no genuine dispute of fact here on that issue.

Meanwhile, the discovery imposes significant and unfair burdens on the Plaintiff.  Defendants' subpoenas to the four law firms raise substantial issues of privilege.  All six recipients of the subpoena may well seek reimbursement from Plaintiff for time spent responding to the subpoenas, and these charges could be substantial.

Because defendants' subpoenas seek information concerning Plaintiff's communications with his lawyers and with a firm providing him with personal security services, the subpoenas

implicate issues of privilege, as well as personal and proprietary interests held by the Plaintiff, and the Plaintiff therefore has standing to object to the subpoenas. *See, e.g.*, *Noble Romans, Inc. v. Hattenhauer Distributing Co.*, 314 F.R.D. 304, 305-07 (S.D. Ind. 2016); *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 239-40 (E.D. Va. 2012); *AGV Sports Group, Inc. v. Protus IP Solutions, Inc.*, 2010 WL 1529195, at *5 (D. Md. April 15, 2010).

Defendants' Position: On January 13, 2021, the Court ordered Plaintiff to respond to Defendants' discovery identifying fiduciaries to whom Plaintiff says he gave specific security instructions, and to describe what those instructions were. Jan. 13, 2021 Minute Order; Jan. 13, 2021 Hr'g Tr. at 13:12. On February 5, 2021, Plaintiff identified several law firms, a security firm, and the board of the building where he lives as entities to whom Plaintiff purportedly requested heightened security for his information. Clark Hill issued third-party subpoenas to these organizations seeking discovery from them related to their interactions with Plaintiff.

As an initial matter, Plaintiff has no standing to quash these subpoenas, because he has no privilege interests in the *facts* of what security precautions he asked the subpoenaed third parties take. *See Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 50 (D.D.C. 2009) (internal citation omitted) (refusing to quash subpoena because "[n]o witness can claim immunity [from testifying] as to facts."). Indeed, Plaintiff does not explain the "personal and proprietary interests" at stake with respect to the non-law-firm subpoenas, or why communications with the building in which he lives would be privileged. Even if he did have a privilege interest, that privilege has been waived as to the specific topic of discovery sought by Defendants (*e.g.*, communications related to the security of Plaintiff's documents), but in any event, quashing the subpoenas is not the appropriate relief where Plaintiff can interpose privilege objections during the depositions. *Goldstein v. F.D.I.C.*, 494 B.R. 82, 90 (D.D.C. 2013).

Even if Plaintiff did have standing to move to quash the subpoenas, Plaintiff's arguments as to relevance of this discovery were already rejected by the Court.  Among the central allegations to Plaintiff's claim are that, in response to a request by Plaintiff or his agents that Clark Hill adopt heightened security measures for Plaintiff's information, the Defendants allegedly made representations to Plaintiff or his agents that they would do so.  Clark Hill does not believe that either of these things occurred.  As a result, Clark Hill sought discovery into Plaintiff's requests to other parties as an indicia of the credibility of Plaintiff's allegations.  On January 13, 2021, the Court ordered Plaintiff to respond to that discovery, rejecting Plaintiff's relevance claims at that time.

The subpoenas in question are now especially relevant because they allow Defendants to test the credibility of a verified discovery response from Plaintiff as to the content of communications with the subpoenaed parties.  Plaintiff has verified that he made certain requests of these third parties.  However, Defendants believe that they will be able to show that Plaintiff's verified discovery responses are false.  The subpoenas thus will not only impact the credibility of a single allegation in this action, but will impact Plaintiff's overall credibility as a witness.

2.    **Plaintiff seeks permission to move for an order compelling Defendants to produce documents related to their response to media inquiries about their representation of the Plaintiff and the cyberattack at issue in this case, including all communications with, and materials supplied to, a third party public relations firm.**

Plaintiff's Position: It is Plaintiff's understanding that Defendants are withholding, on a blanket basis, all documents in which they discussed how to respond to media inquiries concerning their representation of the Plaintiff and the cyberattack at issue in this case, including both internal discussions involving Clark Hill's public relations staff and external communications with an outside public relations firm.  There is no privilege associated with responding to media inquiries, even when those communications involve lawyers and occur entirely in-house.  *See, e.g.*, *Gucci*

4

*America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 78-79 (S.D.N.Y. 2010).  Moreover, the law is overwhelming in its recognition that, to the extent that a party communicates otherwise privileged information to a third-party public relations firm, the privilege is waived.  *See, e.g.*, *United States v. Wollman*, 475 F. Supp. 3d 45, 65-67 (D. Mass. 2020); *Anderson v. SeaWorld Parks & Entertainment, Inc.*, 329 F.R.D. 628, 632-38 (N.D. Cal. 2019); *Bloomburg Jewish Education Center v. Village of Bloomburg, New York*, 171 F. Supp. 3d 136, 141-47 (S.D.N.Y. 2016).  The documents at issue likely include candid, contemporaneous or near-contemporaneous factual accounts of what occurred when Plaintiff's confidential materials were taken from Clark Hill's computer systems.  As such, they are highly relevant and critically important to this case.

Defendants' Position: In the aftermath of the 2017 cyber incident, Clark Hill's outside counsel retained a PR firm for the purpose of assisting with both internal and external crisis communications.  Communications between Clark Hill, its attorneys, and the PR firm are privileged and work product.  The D.C. Circuit has held that where a PR consultant is retained to be part of a team with lawyers, and becomes part of developing a legal strategy, those communications are privileged.  *See F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002).  This is consistent with other courts, which have found such communications to be both privileged and work product.  *See, e.g., Stardock Sys., Inc. v. Reiche*, No. 417CV07025SBAKAW, 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30, 2018); *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 330-32 (S.D.N.Y. 2003); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001); *H.W. Carter & Sons, Inc. v. William Carter Co.*, No. 95 CIV. 1274 (DC), 1995 WL 301351, at *3 (S.D.N.Y. May 16, 1995).

Moreover, the materials in question include documents that were drafted with input from counsel (both outside counsel and Clark Hill's in-house general counsel), including documents drafted by attorneys and that reflect edits and comments from attorneys. Such documents are presumptively privileged and protected work product, and the sharing with a consultant retained by outside counsel under the auspices of privilege does not effect a waiver. *See Alexander v. F.B.I.*, 198 F.R.D. 306, 312 (D.D.C. 2000) (finding that "[d]rafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege"); *Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper*, 236 F.R.D. 16, 21 (D.D.C. 2006) ("[w]here counsel was involved in drafting and editing" the documents at issue, "the drafts are clearly work product because the edits and commentary tend to reveal counsel's opinions and mental impressions"), *amended on denial of reconsideration*, No. CIV A. 03-2080HKKJMF, 2006 WL 1933471 (D.D.C. July 12, 2006); *Nesse v. Pittman*, 202 F.R.D. 344, 350–51 (D.D.C. 2001).

3.     **Plaintiff requests permission to move for an order sanctioning Defendants for non-compliance with the Court's January 12, 2021, Order, and/or to move for an order compelling Defendants to produce withheld documents (or unredacted versions of redacted documents) and to supply additional information in an updated privilege log.**

Plaintiff's Position:   On January 28, 2021, about two weeks after the Court issued its January 12, 2021 Order granting Plaintiff's motion to compel and overruling Defendants' claims of privilege and work product protection with respect to their investigation of the cyberattack at issue in this case, Defendants provided revised privilege logs. Notwithstanding the Court's order, dozens of entries in the privilege log reflect that Defendants are continuing to withhold or redact documents concerning a "cyber incident investigation performed in anticipation of litigation," or an "investigation being done at the request of firm counsel in anticipation of litigation," or a "cyber incident investigation for purposes of seeking legal advice," or "work performed by forensic

6

consultant to outside counsel in anticipation of litigation," among other, similar assertions of privilege that seem to contradict the Court's January 12 Order.  Defendants' January 28, 2021, privilege log likewise reflects continued blanket or near-blanket withholding of information concerning the impact of the cyberattack on other firm clients.  Plaintiff believes that Defendants' continued withholding and redaction of these documents violates the Court's January 12 Order.

Moreover, the entries on the defendants' January 28, 2021, privilege logs provide no meaningful information about the subject matter of the dozens of documents being withheld or redacted, and they often fail even to identify the senders and recipients of documents.  These entries do not comply with the requirement set forth in Rule 26(b)(5) that a party claiming privilege with respect to a document must do so in a manner that allows other parties to assess the claim.

This evening, Defendants have provided revised privilege logs.  Plaintiff has not yet had time to review the revised logs.  Plaintiff requests the opportunity, after review of the revised privilege logs, to seek permission from the Court, during the conference on February 22, to file a motion for sanctions and/or for an order compelling discovery, to the extent that the revised privilege logs reflect (a) continued non-compliance by the Defendants with the Court's January 12 Order, (b) otherwise improper withholding or redaction of documents by the Defendants, or (c) failure by the Defendants to assert privilege with the specificity required by Rule 26(b)(5).

Defendants' Position:  Defendants' privilege log complies with both the law and the Court's orders.  Following the Court's January 12, 2021 order, Defendants produced over 120 documents that pertained to Duff & Phelps's investigation, including communications between Clark Hill and Duff & Phelps related to its investigation.  Plaintiffs now contends that *any* work related to the fallout from the cyber incident has lost its privilege.  Defendants disagree. Defendants continues to withhold and redact communications in which Clark Hill's attorneys

(outside counsel or in-house counsel) provide legal advice, seek information necessary to provide that legal advice, or provide analyses as to the legal implications of the cyber incident.  For example, the Defendants' privilege log describes documents in which Clark Hill's outside counsel used the information in the Duff & Phelps report to give Clark Hill legal advice about whether Clark Hill had reporting obligations under state or federal law as a result of the cyber incident. Those communications are, and remain privileged.  Simply put, communications in which Clark Hill's attorneys (internal or external) gave Clark Hill legal advice about the cyber incident, Clark Hill's investigation or the incident, or its significance, or its implications, are privileged and in some instances, work product.

Plaintiffs also claim that unspecified "dozens" of document descriptions in the log are inadequate.  Defendants have repeatedly asked Plaintiff to identify which Plaintiff believes have inadequate descriptions, but Plaintiff has refused.  Nonetheless, this week, in an effort to avoid an unnecessary dispute before the Court, Defendants revised *every single* document description, and added additional detail to its descriptions.  The initial log descriptions were legally sufficient, and the new ones go above and beyond that which is required.  *See Loftin v. Bande*, 258 F.R.D. 31, 33-34 (D.D.C. 2009) (noting that document's description as "seeking legal advice of counsel" and "reflecting legal advice of counsel" was an "adequate description[]").

Despite admitting that they have not even looked at Defendants' new privilege log, Plaintiffs nonetheless make a baseless request for sanctions.  That request is inappropriate for several reasons.  First, Clark Hill is not asserting any sort of "blanket" privilege,[1] and Plaintiff

---

[1] In fact, it is Plaintiff who is asserting a blanket privilege claim, having not produced a privilege log at all despite Defendants' repeated requests for one.  Plaintiff has repeatedly ignored these requests, refusing to indicate so much as whether Plaintiff intends to produce one.

cannot so claim when Clark Hill has produced over 120 documents pertaining directly to the Duff & Phelps investigation, including communications between Clark Hill and Duff & Phelps.

Second, after reviewing its entire privilege log after the Court's January 12 order, Clark Hill has a good faith belief that the remaining documents are privileged.  Indeed, it is clear from the face of the log (which Clark Hill can make available to the Court for *in camera* review) that nearly all the documents on the log involve communications with or the work of Clark Hill's in-house counsel, or its outside counsel.  A good faith belief about which documents are privileged is not a basis for the imposition of sanctions.  *See Smith v. Ergo Sols., LLC*, No. CV 14-382 (JDB), 2018 WL 5810836, at *4 (D.D.C. Nov. 6, 2018) (though defendant did not prevail in dispute about whether internal investigation report was privileged, the issue was "a genuine dispute that required analysis and consideration by the Court," which did not warrant sanctions, nor did plaintiffs' vague assertions of discovery deficiencies); *Alexander v. F.B.I.*, 186 F.R.D. 188, 196-97 (D.D.C. 1999) (party was not entitled to sanctions because other party was substantially justified in "incorrect but plausible" argument, and non-party was not entitled to sanctions because party's position was taken in good faith).

Third, as to Plaintiff's claim that certain documents lack recipients and senders, as Defendants explained to Plaintiff both by letter and in a meet and confer, the documents in question were attachments to emails where the senders and recipients were clearly indicated, and the document numbering on the log clearly indicates the documents are attachments.  Plaintiff's attempt to manufacture this into non-compliance with Rule 26(b)(5) is unavailing.  And regardless, this line of attack has been mooted by Defendants' revised privilege log, which identifies a sender and recipient (to the extent that information was available) to every document.

Dated:  February 19, 2021                            Respectfully submitted,

*/s/Ari S. Casper*
Ari S. Casper
Ralph S. Tyler
The Casper Firm, LLC
400 East Pratt St., Suite 903
Baltimore, MD 21202
Tel: 410-989-5097
acasper@casperfirm.com

*Counsel for Plaintiff*


*/s/ John R. Storino*
John R. Storino (*via pro hac vice*)
David P. Saunders (*via pro hac vice*)
Leigh J. Jahnig  (*via pro hac vice*)
JENNER & BLOCK, LLP
353 N. Clark Street
By:    Chicago, IL 60654-3456
Tel: (312) 222-9350
JStorino@jenner.com

Kali N. Bracey (#458965)
JENNER & BLOCK, LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001-4412
Tel: (202) 639-6000
KBracey@jenner.com

*Counsel for Defendants*

10

## <u>CERTIFICATE OF SERVICE</u>

I, John R. Storino, an attorney, hereby certify that I caused to be filed the foregoing joint status report using the Court's CM/ECF filing system, which served a copy on all counsel of record on this, the 19th day of February, 2021.

_/s/ John R. Storino_