**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GUO WENGUI,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 19-3195 (JEB)** |
| **CLARK HILL PLC, *et al.*,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Unknown hackers exposed Plaintiff Guo Wengui's personal information to the public after breaching the servers of Defendant Clark Hill PLC, the law firm that had been preparing his application for asylum in the United States. Guo is a prominent critic of the Chinese Communist Party, and both sides assume that the Chinese government was behind the attack. In this Motion, Defendants Clark Hill and firm attorney Thomas K. Ragland (jointly, Clark Hill) ask the Court to compel Guo to answer deposition questions for which he asserted his Fifth Amendment privilege. Because there is at least some possibility that Guo's responses could be incriminating, the Court will deny the Motion. While a negative inference may be available to Clark Hill at some point in this litigation, the Court will not decide that issue here.

**I.      Background**

Clark Hill conducted a 10-hour deposition of Plaintiff, which is documented in a 286-page transcript with 16 exhibits. <u>See</u> ECF No. 69 (Pl. Opp.) at 1, 3. During that deposition, Guo's counsel in his ongoing investigations (as opposed to counsel in this lawsuit) advised him to refuse to answer a number of questions by asserting his Fifth Amendment right against self-

1

incrimination.  See ECF No. 67-1 (Def. Mot.) at 1.  Guo heeded that advice and withheld answers to "approximately 28 questions on a variety of topics," which Defendants bundle into five categories:

- Plaintiff's "alleged consulting relationship with ACA Capital Group Limited";

- Plaintiff's past litigation where he "alleged emotional harm during the same period at issue in this case and litigation Guo has pursued through his entities";

- Plaintiff's "relationship with T&M Protection Resources";

- Plaintiff's "asylum application"; and

- Plaintiff's "wealth and assets."

Id. at 3–4.  Plaintiff did not refuse to answer all questions in these categories, however.  For some, he declined to answer only to the extent that they bore on his "affiliation with any entity" or were "economic or business[ ]related."  ECF No. 67-2, Exh. A (Tbl. of Pl. Invocations of Fifth Amend.), Nos. 6–7.

In moving to compel, Clark Hill asserts that Guo's testimony is not protected by the Fifth Amendment and that his answers to the questions are "centrally relevant" to the issue of damages in this case.  See Def. Mot. at 4; see also ECF No. 71 (Def. Repl.) at 1.  It asks the Court to compel Guo to answer or, in the alternative, to "authorize the giving of a jury instruction permitting a negative inference from Guo's refusal to answer."  Def. Mot. at 2.  Guo's investigations counsel submitted an *ex parte*, *in camera* declaration outlining his reasons for advising Guo to invoke the privilege.  The Court subsequently held an *ex parte* telephonic conference with both Plaintiff's counsel in this suit and his investigations counsel, where it asked for further explanation for why Defendants' questions would require answers that would violate Guo's Fifth Amendment rights.

II.     **Legal Standard**

Rule 37 of the Federal Rules of Civil Procedure entitles parties to "move for an order compelling an answer" in the event that "a deponent fails to answer a question asked under Rule 30 or 31." Rules 30(a)(2) and 31(a)(2) require a court to grant leave for oral and written depositions, respectively, "to the extent consistent with Rule 26(b)(1)." Rule 26(b)(1), in turn, sets the "scope of discovery . . . as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The question here is whether Defendants' deposition questions "regard[] matter[s]" subject to the privilege of the Fifth Amendment.

III.    **Analysis**

Clark Hill argues that the Fifth Amendment does not protect Guo's silence for two reasons. First, it maintains that he "articulated no basis for asserting" the Fifth Amendment privilege and that "some of the topics have no conceivable ability to incriminate him." Def. Mot. at 2. Second, it contends that even if the privilege applied, "Guo waived the privilege over some or all of the[] topics with his prior allegations and discovery answers." Id. The Court considers each of these two arguments before turning to Defendants' alternative request for a jury instruction permitting a negative inference from Guo's refusal to answer.

A.      <u>Fifth Amendment Privilege</u>

The Fifth Amendment protects a witness from being forced to give testimony in a civil case when he "reasonably believes" that such testimony could be used against him "in a criminal prosecution or could lead to other evidence that might be so used." <u>Kastigar v. United States</u>, 406 U.S. 441, 444–45 (1972); <u>see also</u> <u>Ohio v. Reiner</u>, 532 U.S. 17, 21 (2001). To successfully invoke the privilege, Guo has the burden of proving that he faces a threat of self-incrimination

that is "real" and "not remote or speculative."  District Title v. Warren, 265 F. Supp. 3d 17, 21

(D.D.C. 2017) (citing Zicarelli v. N.J. State Comm'n of Investigation, 406 U.S. 472, 478

(1972)); SEC v. Parkersburg Wireless Ltd. Liability Co., 156 F.R.D. 529, 535 (D.D.C. 1994); see

also Hoffman v. United States, 341 U.S. 479, 486 (1951) (more than witness's "say-so" is

required to establish that privilege applies).

Nevertheless, because the Fifth Amendment privilege "must be accorded liberal

construction in favor of the right it was intended to secure," Hoffman, 341 U.S. at 486, the Court

may compel Guo to testify only if it "clearly appears" that he is at no risk of self-incrimination.

Id.; cf. id. at 488 (must be "perfectly clear . . . that the answer(s) cannot possibly have . . . [a]

tendency to incriminate").  With the above considerations in mind, the Court must use its

"personal perception[s] of the peculiarities of the case," id. at 487 (internal citation omitted), to

individually evaluate the applicability of the privilege for each question that Guo refused to

answer.  See Reese, 561 F.2d at 900; see also District Title, 265 F. Supp. 3d at 22.

After reviewing the *ex parte* declaration and hearing from Guo's investigations counsel,

the Court believes that Plaintiff has successfully carried the burden of establishing that there is a

possibility that his answers would be incriminating.  Because the factual basis of that decision is

under seal, however, the Court may not elaborate further on the particulars of Guo's decision.

Defendants' conclusory arguments that "there is no plausible basis for Guo to fear

prosecution based on questions about his wealth, personnel, and residences" and that "questions

concerning his activities in China" cannot possibly "implicate him in prosecution within the

United States" miss the mark.  See Def. Mot. at 8.  The Court is sympathetic to the fact that

"Clark Hill has no basis to understand why Guo thinks answering Clark Hill's questions would

incriminate him" because the details underlying his fear were submitted *in camera*.  See ECF

4

No. 71 (Def. Repl.) at 2.  That imbalance, however, stems from the nature of the Fifth

Amendment privilege.  See Anton v. Prospect Cafe Milano, Inc., 233 F.R.D. 216, 218 (D.D.C.

2006) (citing Reese, 561 F.2d at 900) (courts may not force witness to testify to reasonableness

of his fear of persecution).

Clark Hill also fails in its attempt to frame the inquiry as a question of whether Plaintiff's

answers "would be incrementally incriminating" given his previous statements on related topics.

See Def. Mot. at 6.  The "further incriminat[ion]" standard, which is less deferential to the party

invoking the privilege, only applies after waiver of the privilege has been established.  See

Parkersburg Wireless, 156 F.R.D. at 535 & n.10 (explaining that Rogers v. U.S., 340 U.S. 367

(1951), intended wider scope of inquiry to be available after waiver than before) (internal

citations omitted).  It, accordingly, has no bearing on the question of whether the privilege

attaches in the first place.  Id. at 535 n.10 ("In determining whether a new question 'further

incriminates' [the] defendant, the Court should not apply the same rigid test used to determine

whether the privilege could be initially invoked.").

Having reviewed the individual questions at issue, the Court finds that each has a

sufficient nexus to topics where Guo has a reasonable fear that he could be exposed to criminal

liability.  The Fifth Amendment privilege thus attaches, unless Defendants can prove waiver.

B.     Waiver

A witness waives his Fifth Amendment privilege by "voluntarily rais[ing]" an

incriminating issue.  Id. at 535 (citing Rogers, 340 U.S. at 373).  Federal courts "have universally

held that a 'testimonial waiver is not to be lightly inferred and the courts accordingly indulge

every reasonable presumption against finding a testimonial waiver.'"  In re Vitamins Antitrust

Litigation, 120 F. Supp. 2d 58, 66 (D.D.C. 2000) (quoting Klein v. Harris, 667 F.2d 274, 287 (2d

Cir. 1981)); see also Smith v. United States, 337 U.S. 137, 150 (1949). "Traditionally, courts have only inferred a waiver of the Fifth Amendment's privilege against self-incrimination from a witness's prior statements if [both]: '(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the Fifth Amendment's privilege against self-incrimination.'" In re Vitamins Antitrust Litigation, 120 F. Supp. 2d at 66 (quoting Klein, 667 F.2d at 287).

As discussed above, Clark Hill groups the unanswered questions into five categories: (1) Guo's relationship with ACA Capital; (2) his past litigation involving allegations of emotional harm; (3) his relationship with T&M Protection Resources; (4) his asylum application; and (5) his wealth and assets. See Def. Mot. at 3–5. Defendants posit that Guo voluntarily provided information in each of these categories. Id. at 5–6. They further assert that the unanswered questions "are highly relevant to [their] defense." Def. Repl. at 2. Because the questions implicate Guo's Fifth Amendment privilege, however, the inquiry is not whether his answers would be "relevant." Rather, for this Court to infer waiver, Guo's previous testimony must satisfy the two-part test outlined above. See In re Vitamins Antitrust Litigation, 120 F. Supp. 2d at 67. This is not the case here.

For questions in category (1), Defendants insist that they "must be able to challenge the notion that Guo's reputation was harmed and his relationship with ACA goes directly to that." Def. Repl. at 3. For category (4), they argue that "[t]o the extent Guo was untruthful on [his asylum] application or now gives statements inconsistent with it, that goes directly to his credibility and claims in the case." Id. Those are persuasive arguments that the unanswered questions would be relevant to Clark Hill's defense, but they do not establish that Guo's prior

statements will leave the factfinder with a distorted view of events.  The Fifth Amendment often insulates details that would be helpful to a party's case, so Defendants must prove more.  As for category (3), Guo's statements in different lawsuits cannot constitute waiver in this matter.  See In re Vitamins Antitrust Litigation, 120 F. Supp. 2d at 66 ("[M]ost courts that have considered this issue have held that the waiver of the privilege against self-incrimination in one proceeding does not affect the right of a witness or accused to invoke the privilege as to the same subject matter in another independent proceeding, but is limited to the proceeding in which it occurs.").  And for categories (2) and (5), Defendants point to nothing in Plaintiff's prior testimony that could be construed as a waiver for such broad categories as his "relationship with T&M Protection" or his "wealth and assets."  See Def. Mot. 6–7.

A trial court must "'strive to accommodate a party's Fifth Amendment interests' while at the same time being careful to 'ensure that the opposing party is not unduly disadvantaged.'"  In re Vitamins Antitrust Litigation, 120 F. Supp. 2d at 66–67 (quoting Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996)).  Here, the balance of those competing considerations weighs in favor of preserving Plaintiff's constitutional right.  The Court thus finds that his previous testimony did not waive his Fifth Amendment privilege.

C.    Negative Inference

As a fallback, Defendants argue that the Court must at the least order that the jury should draw a negative inference from Guo's invocation of the privilege.  See Def. Mot. at 8–10; Def. Repl. at 5.  Courts may indeed draw an adverse inference against a civil litigant who successfully invokes his Fifth Amendment privilege.  SEC v. Whittemore, 659 F.3d 1, 12 (D.C. Cir. 2011), aff'g 691 F. Supp. 2d 198 (D.D.C. 2010).  Such inference is appropriate when a party to a civil proceeding "refuse[s] to testify in response to probative evidence offered against [him]."  SEC v.

Int'l Loan Network, Inc., 770 F. Supp. 678, 695 (D.D.C. 1991), aff'd, 968 F.2d 1304 (D.C. Cir.

1992) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)).  Since Guo "control[s] the

evidence" that Clark Hill seeks, an adverse inference may be particularly warranted.  See

Whittemore, 691 F. Supp. 2d at 206.  A factfinder may also consider Guo's silence when later

evaluating his credibility.  Latif v. Obama, 666 F.3d 746, 759 (D.C. Cir. 2011).  Such silence,

however, "should be 'given no more evidentiary value than [i]s warranted by the facts

surrounding his case.'"  Int'l Loan Network, Inc., 770 F. Supp. at 695 (alteration in original)

(quoting Baxter, 425 U.S. at 318); cf. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266

(9th Cir. 2000) (rejecting adverse inference from party's refusal to provide results of unreliable

medical test that would not have been admissible as evidence).  An adverse inference is thus

likely warranted here.

     While this may be so, the Court finds it premature to decide on the precise wording of a

jury instruction at this stage.  The better course is to wait until hearing the parties' arguments and

the evidence introduced.  In addition, if Defendants believe that a negative inference would be

relevant and appropriate at summary judgment, they may so indicate in that briefing.

**IV.     Conclusion**

     Because Plaintiff has sufficiently shown that answering Defendants' questions could put

him at risk of criminal liability, the Court will deny their Motion to compel his deposition

testimony.  A separate Order so stating will issue this day.

                                        /s/ *James E. Boasberg*
                                        JAMES E. BOASBERG
                                        United States District Judge

Date:  October 25, 2021